**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 24 2001**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

UTAH LICENSED BEVERAGE
ASSOCIATION, a Utah non-profit
corporation; WAYNE BENSON; and
NEW MOON PRESS, INC., a Utah
corporation d.b.a. CATALYST,

Plaintiffs-Appellants,

v.

MICHAEL LEAVITT, Governor, State
of Utah; JANET GRAHAM, Attorney
General, State of Utah; JERRY D.
FENN, Chair, Utah Alcoholic
Beverage Control Commission;
NICHOLAS E. HALES, VICKIE
McCALL, TED LEWIS, and CARL
HAWKINS, Members, Utah Alcoholic
Beverage Control Commission,

Defendants-Appellees.

No. 00-4058

---

Appeal From The United States District Court
for the District of Utah
(D.C. No. 2:96-CV-581-S)

---

Brian M. Barnard, (James L. Harris, Jr., with him on the briefs), Utah Legal
Clinic, Salt Lake City, Utah, for Plaintiffs-Appellants.

Thom D. Roberts, Assistant Attorney General, State of Utah (Jan Graham,
Attorney General, State of Utah, with him on the brief), Salt Lake City, Utah, for
Defendants-Appellees.

Before **HENRY** and **MURPHY** , Circuit Judges, and **MILLS** , District Judge. [1]

**HENRY** , Circuit Judge.

Plaintiffs brought this 42 U.S.C. § 1983 action against the defendant state officials, seeking declaratory and injunctive relief for alleged violations of the First Amendment.  The district court denied the plaintiffs' request for a preliminary injunction, as well as their motion for summary judgment.  Plaintiffs now appeal the denial of the preliminary injunction; we have jurisdiction pursuant to 28 U.S.C. § 1292(a)(1).  Because Supreme Court precedent protects the commercial speech at issue here, we reverse the judgment of the district court.

## BACKGROUND

The State of Utah exercises strict control over the importation, distribution, marketing, and sale of alcoholic beverages within its borders.  In this case, we are asked to decide whether one aspect of that control–Utah's restrictions on commercial advertisements for liquor–impermissibly infringes upon the First Amendment rights of that state's citizens.

---

[1]  The Honorable Richard Mills, United States District Judge for the Central District of Illinois, sitting by designation.

Both parties in this case recognize that the Twenty-first Amendment gives Utah broad powers to regulate alcoholic beverages. See U.S. Const., amend. XXI, § 2; Ziffrin, Inc. v. Reeves, 308 U.S. 132, 138 (1939). However, in 1996, appellants (henceforth collectively referred to as "ULBA," for Utah Licensed Beverage Association) sued defendants (henceforth "Utah"). ULBA argued that in light of certain recent First Amendment decisions by the Supreme Court, Utah's laws restricting commercial advertising by vendors of wine and distilled spirits could no longer be considered a proper exercise of the state's Twenty-first Amendment powers. See Aplt's Br. at 2 (citing 44 Liquormart, Inc. v. Rhode Island, 517 U.S. 484 (1996), and Rubin v. Coors Brewing Co., 514 U.S. 476 (1995)).

Three years later, the district court denied ULBA's motions for summary judgment and for a preliminary injunction. It concluded that ULBA had not demonstrated "that the State's restrictions on advertising of alcoholic beverages are an unconstitutional infringement upon [ULBA's] First Amendment rights," and had failed to establish any of the elements necessary to support a preliminary injunction. Aplt's App. at 251 (Memorandum Decision Addressing Plaintiffs' Motion for Preliminary Injunction, dated Feb. 28, 2000, at 5). ULBA now appeals.

## DISCUSSION

### I. Standard Of Review

We review a district court's denial of a preliminary injunction for an abuse of discretion. [2] See A.C.L.U. v. Johnson, 194 F.3d 1149, 1155 (10th Cir. 1999). An abuse of discretion occurs "only when the trial court bases its decision on an erroneous conclusion of law or where there is no rational basis in the evidence for the ruling." Hawkins v. City and County of Denver, 170 F.3d 1281, 1292 (10th Cir. 1999) (internal quotation marks omitted).

### II. Elements Necessary To Obtain A Preliminary Injunction

In order to obtain a preliminary injunction, a movant must establish (1) that it has a substantial likelihood of prevailing on the merits; (2) that it will suffer irreparable injury if the injunction is denied; (3) that the threatened injury to the movant outweighs the injury that the opposing party will suffer under the injunction; and (4) that the injunction would not be adverse to the public interest. See Country Kids 'N City Slicks, Inc. v. Sheen, 77 F.3d 1280, 1283 (10th Cir.

---

[2] On Feb. 28, 2000, the district court simultaneously denied ULBA's motions for a preliminary injunction and for summary judgment. ULBA has appealed the denial of its requested preliminary injunction, but has not appealed the denial of summary judgment, which is ordinarily not a final order under 28 U.S.C. § 1291. See Schmidt v. Farm Credit Servs., 977 F.2d 511, 513 n.3 (10th Cir. 1992).

-4-

1996).  Because "a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal."   SCFC ILC, Inc. v. Visa USA, Inc.  , 936 F.2d 1096, 1098 (10th Cir. 1991) (citation omitted).

## III.  ULBA's Likelihood of Success on the Merits

ULBA contends that despite our deferential standard of review, it has demonstrated a substantial likelihood of prevailing on the merits, because the district court made an error of law and "misapplied" the test set forth in   Central Hudson Gas & Electric Corp. v. Public Service Comm'n of New York    , 447 U.S. 557 (1980).  As a consequence, ULBA maintains that it has satisfied the first requirement for preliminary injunctive relief.

Under  Central Hudson  , laws restricting commercial speech are subject to an "intermediate" level of scrutiny.  The Supreme Court stated:

> In commercial speech cases, then, a four-part analysis has developed. At the outset, we must determine whether the expression is protected by the First Amendment.  For commercial speech to come within that provision, it at least must concern lawful activity and not be misleading. Next, we ask whether the asserted government interest is substantial. If both inquiries yield positive answers, we must determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest.

Id. at 566.  In order to determine whether the district court made an error of law when it concluded that ULBA had not established a likelihood of success on the merits, we must review that court's application of the   Central Hudson  test.

-5-

**A. The District Court's  Central Hudson  Analysis**

The district court considered the four part Central Hudson test in detail in its Memorandum Decision Addressing Plaintiffs' Motion For Summary Judgment, which it incorporated by reference into its Memorandum Decision Addressing Plaintiffs' Motion For Preliminary Injunction.

With respect to the first part of the Central Hudson test, whether the regulated speech concerns lawful activity and is not misleading, the district court agreed with ULBA that a number of the challenged statutes regulated lawful, nonmisleading speech. It rejected Utah's argument that the majority of the statutes regulated conduct, not speech, and were thus constitutional. The court stated that, because "[c]onsumption of alcoholic beverages involves lawful conduct," and "[c]ommercial speech about lawful conduct is subject to First Amendment protection," Utah could not "escape review of its legislation by asserting that the challenged conduct is unlawful under the very same legislation being reviewed." Aplt's App. at 268.

In the second part of the test, which requires the court to assess the substantiality of the government's interest, the district court found that the interests cited by Utah in support of its advertising restrictions were in fact substantial. The court identified these interests as the "operation of a public business, with the goal of satisfying public demand for alcoholic beverages while

-6-

protecting the public interest 'including the rights of citizens who do not wish to be involved with alcoholic products,'" as well as "the promotion of the public welfare," including concerns such as "temperance, health, safety, consumer protection [and] protecting minors." Id. at 270 (citing Utah Code Ann. § 32A-1-104(3) (1999)). The court rejected ULBA's argument that protecting non-drinkers from alcohol advertising could not be a substantial interest, stating that where "operating a public business . . . involves alcoholic beverages it seems clear that a substantial interest is involved, even when a stated goal is to protect non-drinkers." Id. at 271.

The district court then turned to the third part of the test, inquiring whether the Utah laws directly advanced the interests identified by the state. The court noted statistics put forth by ULBA which supposedly demonstrated that the repeal of advertising restrictions would not lead to an increase in overall demand for alcohol. It then reviewed the evidence submitted by Utah, in the form of testimony and affidavits by various physicians and public health officials, who opined that "the State's public welfare interest is real and materially advanced by the State's regulation of alcoholic beverage advertising." Id. at 273. The court concluded that "there is sufficient evidence of record to place in dispute the issue of whether the State's asserted interests in restricting advertising of alcoholic

beverages are directly and materially advanced by the challenged restrictions on advertising alcoholic beverages." Id. at 273-74.

Finally, the district court reached the fourth part of the Central Hudson test, "whether the speech restriction is no more extensive than is necessary to serve the government interest." Id. at 274. It cited the Supreme Court's recent discussion in Greater New Orleans Broadcasting Ass'n, Inc., v. United States, 527 U.S. 173 (1999), where the Court stated that in the fourth part of the test, "[t]he Government is not required to employ the least restrictive means conceivable, but it must demonstrate narrow tailoring of the challenged regulation to the asserted interest–a fit that is not necessarily perfect, but reasonable." Aplt's App. at 274 (quoting Greater New Orleans, 527 U.S. at 188) (internal quotation marks omitted).

The district court determined that Utah had again "succeeded in placing in dispute" the issue of whether its statutes satisfied the fourth part of Central Hudson. Aplt's App. at 278. It stated that Utah's statutes fell short of being "a total or blanket ban against dissemination of any information about alcoholic beverages," and that "[l]ess burdensome alternative methods to advance the somewhat contradictory interests of the State do not readily come to mind." Id. at 276, 278. It described those "contradictory interests" as Utah's goals of "operating its alcoholic beverage business using sound business practices to

-8-

service public demand, while at the same time operating under the stricture that it not promote the sale or consumption of alcoholic beverages." Id. at 278 n.8.

**B. Application of Central Hudson to Utah's Challenged Regulations**

We now turn to the question of whether the district court's application of the Central Hudson test was correct. As we do so, we are mindful of the Supreme Court's consistent admonition that "in cases raising First Amendment issues . . . an appellate court has an obligation to 'make an independent examination of the whole record' in order to make sure that 'the judgment does not constitute a forbidden intrusion on the field of free expression.'" Bose Corp. v. Consumers Union of United States, Inc., 466 U.S. 485, 499 (1984) (quoting New York Times Co. v. Sullivan, 376 U.S. 254, 284-86 (1964)); see also Lytle v. City of Haysville, Kan., 138 F.3d 857, 862 (10th Cir. 1998). This searching review is a consequence of the primacy of First Amendment speech protections; broad interpretations of the freedom of speech have repeatedly attracted substantial majorities of the Supreme Court. See, e.g., Greater New Orleans, 527 U.S. 173 (1999); Hustler v. Falwell, 485 U.S. 46 (1988); Brandenburg v. Ohio, 395 U.S. 444 (1969).

**1. Regulation of Truthful, Nonmisleading Speech**

The district court found that several of the statutes in controversy restrict truthful, nonmisleading commercial speech, not conduct, and thus satisfy the first part of Central Hudson . Unsurprisingly, ULBA does not contest this finding. Utah, however, claims that some of these statutes are permissible prohibitions on the advertising of unlawful conduct. For instance, Utah Code Ann. § 32A-12-401(6) prohibits "the advertising or use of any means or media to offer alcoholic beverages to the general public without charge." Utah Code Ann. § 32A-12-401(6) (2000). Utah reasons that because the state may ban alcohol "giveaways," it may also ban the advertising of such giveaways, and thus this statute is not unconstitutional under Central Hudson . Aple's Br. at 16-19.

We agree with the district court that such statutes are distinguishable from those challenged on appeal by ULBA. ULBA's brief describes "the main Utah statutes at issue herein" as Utah Code Ann. § 32A-12-401(2), which provides that:

The advertising or use of any means or media to induce persons to buy liquor is prohibited, except:

(a)     a restaurant licensee, an airport lounge licensee, a manufacturing licensee, or a private club licensee may display a sign on the front of, in the window of, and inside its premises stating "Department of Alcoholic Beverage Control Licensee," "DABC Licensee," or "State Liquor Licensee" in a form approved by the department;

(b)     a restaurant licensee may use the designation "Department of Alcoholic Beverage Control Licensee," "DABC Licensee," or "State Liquor Licensee" in magazines, newspapers, telephone

> book advertising pages, and other advertising in a nonbold 10-point type face;
>
> (c)    a permittee may use the designation "Department of Alcoholic Beverage Control Permittee," "DABC Permittee," or "State Liquor Permittee" in a form approved by the department when informing the public or its invited guests about the event or service for which the permit was obtained;
>
> (d)    a restaurant licensee may advertise liquor availability in menus only to the extent authorized in Chapter 4;
>
> (e)    a hotel may advise its guests of liquor availability at its outlets in informational materials; and
>
> (f)    as otherwise authorized by this title or the rules of the commission.

Utah Code Ann. § 32A-12-401(2) (2000); as well as § 32A-12-401(4), which provides that:

> The display of liquor or price lists in windows or showcases visible to passersby is prohibited.

Utah Code Ann. § 32A-12-401(4) (2000); and § 32A-12-104, which provides that:

> Any person who violates this title or the commission rules adopted under this title is guilty of a class B misdemeanor, unless otherwise provided in this title.

Utah Code Ann. § 32A-12-104 (2000). These statutes are the only statutes clearly raised on appeal. See Aplt's Br. at 4-5. Because they restrict the speech of individuals engaged in otherwise lawful, nonmisleading commercial activity, we find no error in the district court's conclusion that they satisfy the first part of Central Hudson .

-11-

## 2. Substantiality of the Government Interest in Regulation

The second part of Central Hudson asks whether the interests asserted by the state in order to justify the speech regulations are substantial. Again, because of the importance of First Amendment speech protections, "the government bears the responsibility of building a record adequate to clearly articulate and justify" these state interests. U.S. West, Inc. v. Federal Communications Comm'n, 182 F.3d 1224, 1234 (10th Cir. 1999). Not only is this the government's burden, but courts may not help; the Supreme Court has clearly stated that courts may not "supplant the precise interests put forward by the State with other suppositions." Edenfield v. Fane, 507 U.S. 761, 768 (1993).

As stated above, the district court found that Utah had substantial interests in the operation of liquor sales as a public business (including "protecting nondrinkers"), and in the public welfare, including temperance, health, and safety. On appeal, ULBA argues that Utah has identified no constitutionally substantial state interests other than "temperance." Aplt's Br. at 13. It should be noted that this argument is itself tempered by ULBA's broad definition of the term. Even if "temperance" is understood to include essentially all public health related goals, [3]

---

[3] In ULBA's view, these include discouraging "over-consumption," intoxication, drunk driving, and underage access and consumption; minimizing the health consequences of alcohol; and "promoting public safety, health and welfare as related to alcohol." See Aplt's Br. at 13-14.

ULBA does not object to the district court's characterization of "temperance" as a state interest that can satisfy the second part of Central Hudson .

However, ULBA proposes that Utah's alleged public interest in "operating a well managed public business in selling alcohol is not substantial such as to allow First Amendment infringement"; that its interest in "protecting nondrinkers from liquor advertising" is "contrary to the basic concepts of free expression"; and that its goal of "protecting consumers from improper claims" or "overreaching" cannot justify general restrictions on advertising. Aplt's Br. at 13-14; Aplt's Reply Br. at 7-8. ULBA also states that Utah has failed to articulate and justify any of these state interests in a manner sufficient to satisfy Central Hudson 's second part.

In opposition, Utah does not present new arguments in support of these interests, but merely asserts that temperance, operating a public business, protecting the public welfare, protecting nondrinkers, and all activities subsidiary to those aims were determined by the district court to be legitimate and substantial interests of the state. In support of the district court's conclusion, Utah does contend that the Twenty-first Amendment, "granting the states the right to completely control alcohol in its [sic] borders, as well as the public safety, health and welfare interests and the police power all combine to make, as the court below found, these State interests 'substantial.'" Aple's Br. at 19-20.

-13-

If the term is broadly defined to include goals such as promoting public health, discouraging underage consumption, and the like, both parties seem to agree that Utah has established "temperance" as an adequate basis for state regulation under the second part of the test. See 44 Liquormart, 517 U.S. at 504 (discussing a state's interest in promoting "temperance," defined as "reducing alcohol consumption"). Operating liquor sales as a public business qualifies as an additional substantial interest, as the state's monopoly over liquor sales not only affects "temperance," but also supplies revenue.

However, Supreme Court precedent suggests that even if protecting nondrinkers from involvement with alcohol is part of a public business, it cannot constitute a substantial state interest under Central Hudson. In Bolger v. Youngs Drug Products Corp., 463 U.S. 60 (1983), the Court struck down a federal statute prohibiting the unsolicited mailing of contraceptive advertisements. The Court stated that the government's asserted interest, the shielding of "recipients of mail from materials they are likely to find offensive . . . carries little weight." Bolger, 463 U.S. at 71. It held that:

> In striking down a state prohibition of contraceptive advertisements in Carey v. Population Services International, [431 U.S. 678 (1977),] we stated that offensiveness was "classically not [a] justificatio[n] validating the suppression of expression protected by the First Amendment. At least where obscenity is not involved, we have consistently held that the fact that protected speech may be offensive to some does not justify its suppression." We specifically declined to recognize a distinction between commercial and noncommercial speech

-14-

that would render this interest a sufficient justification for a prohibition of commercial speech.

Id. at 71-72 (citations and footnote omitted). We can see little distinction between the "offensiveness" rationale that the Court deemed unsubstantial in Bolger, and that of protecting nondrinkers. Because Bolger also concerned commercial speech, we construe it to mean that protecting nondrinkers cannot constitute a substantial state interest justifying Utah's speech restriction, even as one aspect of operating a public business.

We conclude that Utah has identified two substantial state interests that potentially justify its speech restrictions: temperance (expansively defined), and the operation of a public business.

**3. Whether Utah's Laws Directly Advance the State's Interests**

ULBA next contends that the district court was incorrect when it concluded that, for the purpose of surviving summary judgment, Utah's laws satisfied the third part of Central Hudson. The third part of Central Hudson "concerns the relationship between the harm that underlies the State's interest and the means identified by the State to advance that interest." Lorillard Tobacco Co. v. Reilly, 121 S. Ct. 2404, 2422 (2001). We must therefore consider whether Utah's laws restricting liquor advertising "directly and materially" advance its interests in

temperance and the operation of a public business. See Greater New Orleans, 527 U.S. at 188.

The Supreme Court has stated that "[t]he party seeking to uphold a restriction on commercial speech carries the burden of justifying it." Bolger, 463 U.S. at 71 n.20. This burden "is not satisfied by mere speculation or conjecture"; in order to meet its burden, Utah "must demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree." Edenfield, 507 U.S. at 770-71. In addition, a speech regulation "may not be sustained if it provides only ineffective or remote support for the government's purpose." Greater New Orleans, 527 U.S. at 188 (quoting Central Hudson, 447 U.S. at 564). The Court cautions us that these requirements are "critical," for otherwise, "a State could with ease restrict commercial speech in the service of other objectives that could not themselves justify a burden on commercial expression." Coors, 514 U.S. at 487 (quoting Edenfield, 507 U.S. at 771).

ULBA suggests Utah has failed to carry its burden for three reasons. The first two of these concern the reality of the alleged harms, and the third pertains to their alleviation. First, since 1996, when Utah amended its laws and repealed a prior ban on beer advertising, there has apparently been no significant increase in the consumption of beer within the state. From this, ULBA concludes that beer advertising evidently does not affect beer consumption, and that the same is likely

-16-

to be true with respect to liquor and the liquor advertising ban. Second, ULBA argues that the "overwhelming weight of scientific evidence, including the expert testimony supporting [ULBA's] motion for preliminary injunction," tends to show that advertising does not increase alcohol consumption. Aplt's Br. at 19. In ULBA's view, these two facts demonstrate that the liquor advertising ban does not prevent any real harm. [4]

Third, ULBA proposes that Utah also fails Central Hudson 's third part because the state's inconsistent treatment of different types of alcohol ensures that its speech restrictions will not alleviate the harms they are designed to

---

[4] We note that we are not convinced by ULBA's beer sales statistics, which purportedly demonstrate the lack of any connection between advertising and alcohol sales. ULBA's comparison of beer sales before and after the lifting of Utah's beer advertising ban, in that state alone, over a period of a few years, is simplistic. As Utah suggests, many factors other than advertising (such as the state of the economy, the character of national beer advertising unregulated by Utah, or the taxes levied on alcohol sales) could have influenced beer sales over the same period. See Aple's Br. at 33.

For example, suppose that in 1996, sales of beer were about to drop precipitously, due to increased public concerns about adverse health effects. Suppose, too, that advertising did encourage consumption. When the advertising ban was lifted, the new advertising might have increased beer consumption just enough to cancel out the health-motivated drop which would otherwise have occurred. The offsetting effects of these two trends might make advertising's effects look neutral, but on the facts of this hypothetical, that conclusion would be incorrect.

Because ULBA does not employ a method, such as a multiple regression analysis, that accounts for the other possible influences on alcohol sales, its Utah beer sales statistics offer no reliable evidence as to whether there is a causal relationship between advertising and alcohol sales.

-17-

redress, thus making the scheme "irrational" under Coors. In Coors, the Supreme Court applied Central Hudson and struck down a federal statute that prohibited the disclosure of alcohol content on the labels of containers of beer. The federal government's asserted interest was to prevent "strength wars" among beer manufacturers, and the statute sought to accomplish this by banning both "numerical indications of alcohol content" and "descriptive terms" such as "strong" and "extra strength." Coors, 514 U.S. at 480-81.

In applying the third part of the Central Hudson test, the Court stated that the challenged beer label restriction "cannot directly and materially advance [the government's] asserted interest because of the overall irrationality of the Government's regulatory scheme," under which there were additional provisions within the same statute, as well as other federal laws, that undermined any tendency of the labeling ban to prevent strength wars. Coors, 514 U.S. at 488. These included provisions that permitted descriptions of alcohol content in alcohol advertising, and permitted the disclosure of alcohol content on the labels of alcoholic beverages other than beer. Id. at 488-89.

According to ULBA, unless one form of alcohol is more harmful or dangerous than another, temperance cannot be promoted by a statutory scheme that permits some types of alcohol advertising and proscribes others. But, ULBA argues, Utah itself engages in a public health advertising campaign which states

-18-

that there is no meaningful difference, other than equivalent liquid volume, among different kinds of alcohol. See Aplt's App. at 242 (advertisement declaring "Alcohol Is Alcohol Is Alcohol . . . It's Not What You Drink. It's How Much."). Because Utah has presented "no sound reason" why advertising restrictions on wine and liquor confer more temperance benefits than comparable (but nonexistent) restrictions on beer advertising, ULBA concludes that Utah's ban on the advertising of only certain kinds of alcoholic beverages is irrational, and consequently unconstitutional, under Greater New Orleans and Coors. Aplt's Br. at 23-24.

Utah makes several counterarguments with respect to Central Hudson's third part. First, Utah contends that under Board of Trustees of State University of New York v. Fox, 492 U.S. 469 (1989), it is only required to achieve a "reasonable" fit, not a "perfect" fit, between its regulations and its goals. Aple's Br. at 21-22 (quoting Fox, 492 U.S. at 480). Under Fox, Utah states that in regulating commercial speech, it must employ "not necessarily the least restrictive means but . . . a means narrowly tailored to achieve the desired objective." Id. Utah concludes that this gives it some latitude in selecting a permissible advertising restriction. Second, Utah argues that ULBA "completely ignore[s]" evidence submitted by the state, especially the statements of three physicians and public health officials, suggesting that alcohol advertising does affect the

-19-

problems Utah identified as its substantial state interests.      See Aple's Br. at 23-24; Aplt's App. at 140-57.

Third, Utah defends its distinctions between beer and liquor advertising as a permissible consequence of its decision, pursuant to its Twenty-first Amendment powers, to apply different regulations to beer and liquor sales. Because beer sales are not operated as a public business by the state, Utah suggests that it is not irrational to regulate beer advertising differently from liquor advertising. The state attributes this distinction to the fact that beer with a sufficiently low alcohol content was not considered an intoxicating beverage banned under the Eighteenth Amendment, and that when the Eighteenth Amendment was repealed by the Twenty-first, Utah continued to regulate low-alcohol beer in a manner different from other alcoholic beverages.      See Aple's Br. at 25-27.

Before we conduct our own analysis of     Central Hudson  's third part, we must note an issue raised by Utah's arguments concerning the burden of proof. Utah seems to imply that because ULBA is appealing the denial of a preliminary injunction, it is ULBA's burden to affirmatively attack the Utah statutes, rather than Utah's burden to defend them. For example, Utah states that ULBA has "failed to demonstrate that the trial court abused its discretion in determining that [ULBA] had failed to show that there was a likelihood they would prevail on the

issue of whether the regulations directly advance the State interests."  Aple's Br. at 22.  Evidently, Utah either conflates the Central Hudson test and the test for the issuance of a preliminary injunction, or assumes that the allocation of burdens within this part of the Central Hudson test will shift as a consequence of the case's procedural posture.

Utah cites no authority in support of the notion that the Central Hudson burden should shift away from the state, due to the procedural posture of this case.  However, we note that in its recent decision in Lorillard, the Supreme Court mentioned the procedural posture of that case in evaluating whether the state had met its evidentiary burden under the third part of Central Hudson.  Lorillard in part concerned whether the State of Massachusetts had adequately justified regulations restricting the advertising of cigars and smokeless tobacco.  The Court stated:

> Our review of the record reveals that the Attorney General has provided ample documentation of the problem with underage use of smokeless tobacco and cigars.  In addition, we disagree with petitioners' claim that there is no evidence that preventing targeted campaigns and limiting youth exposure to advertising will decrease underage use of smokeless tobacco and cigars.  On this record and in the posture of summary judgment, we are unable to conclude that the Attorney General's decision to regulate advertising of smokeless tobacco and cigars in an effort to combat the use of tobacco products by minors was based on mere "speculation [and] conjecture."

Lorillard, 121 S. Ct. at 2425 (citation omitted).

Despite its reference to a summary judgment proceeding, the Court clearly viewed the Central Hudson burden as having remained on the state, despite Lorillard's procedural posture. At most, the Court's opinion suggests that disputed evidence should be viewed in the favor of the nonmoving party. As a consequence, we hold that the burden remains on Utah to justify its speech restrictions. See also Bad Frog Brewery, Inc. v. New York State Liquor Authority, 134 F.3d 87, 97-102 (2d Cir. 1998) (Central Hudson analysis applied without burden shifting, despite the fact that the brewery was appealing the denial of its motion for summary judgment and for a preliminary injunction).

We now turn to our analysis of the third part of the Central Hudson test. In order to justify any regulation of alcohol advertising, Utah must show that its regulations directly and materially advance its substantial state interests. It has identified two legitimate interests: temperance and the operation of a public business.

With respect to temperance, we have carefully reviewed the evidence presented by Utah concerning the relationship between temperance and alcohol advertising. We note that while that evidence repeatedly warns of the dangers of alcohol, and suggests that these dangers may be aggravated by alcohol advertising, it makes virtually no distinction among different types of alcohol. In fact, while Utah's documents use the word "alcohol" dozens of times, see Aplt's

-22-

App. at 140-57, they refer to only two studies regarding a particular type of alcohol. Those studies point to the adverse effects of beer advertising. See id. at 150, 152. If the words "liquor" or "wine" appear anywhere in Utah's evidence, this court is unable to find them.

Utah's evidence thus appears to prove only that there is a substantial state interest in tempering the consumption of all types of alcohol, not just liquor and wine. Following the analysis of Coors, this makes no rational sense if Utah's true aim is to suppress the social ills which its own evidence attributes to all types of alcohol. See Coors, 514 U.S. at 488. Like the regulations struck down by the Supreme Court in Greater New Orleans, the Utah statutes currently "distinguish[] among the indistinct, permitting a variety of speech," such as beer advertising, "that poses the same risks the Government purports to fear, while banning messages unlikely to cause any harm at all," such as the posting of wine lists on the outside of restaurants. See Greater New Orleans, 527 U.S. at 195. We conclude that, with respect to the state's interest in temperance, Utah's present scheme of advertising regulation must be considered irrational. It thus fails the third part of Central Hudson.

Utah also cannot justify its advertising restrictions through its operation of a public business in liquor sales, as Utah has presented no evidence supporting the somewhat counterintuitive argument that advertising by liquor licensees poses

-23-

any threat to the operation of a public business. As the state itself declares, Utah's liquor licensees are intensely regulated. Utah states that liquor-related "[s]ales and activities may only be conducted by individuals licensed by the State to engage in those activities in accordance with the alcoholic beverage distribution and marketing system"; that the state is the exclusive wholesale dealer in liquor; and that it sets both the wholesale and retail prices at which liquor may be sold. See Aple's Br. at 14-15, 19; see also Utah Code Ann. § 32A-5-107 (2000) (regulating business conduct of liquor licensees). As a consequence, it must be presumed that no matter how much a liquor licensee chose to advertise, it would still be forced to purchase its products from the state, and sell them in the manner prescribed by the state.

We reiterate that Utah has the burden to prove both that liquor advertising harms its substantial interest in operating a public business in alcohol sales, and that its laws restricting liquor advertising will reduce any such harms to a material degree. Its conclusory assertion that "[ULBA] do[es] not address the interests of the State in its public business and its chosen marketing and sales provisions" is insufficient to meet that burden. Aple's Br. at 22. We hold that Utah's public business rationale also fails the third part of Central Hudson.

Finally, we turn to Utah's alternate argument that its Twenty-first Amendment authority, and its history of differential regulations of liquor and

-24-

beer, can justify its speech restrictions under the third part of Central Hudson.

See Aple's Br. at 25-27. The plurality opinion of the Supreme Court in Part VI of 44 Liquormart stated that "[e]ven though government is under no obligation to provide a person, or the public, a particular benefit, it does not follow that conferral of the benefit may be conditioned on the surrender of a constitutional right." 44 Liquormart, 517 U.S. at 513. And, in Part VII, a majority of the Court held that "the Twenty-first Amendment does not qualify the constitutional prohibition against laws abridging the freedom of speech embodied in the First Amendment." Id. at 516. To permit Utah to abridge the commercial speech rights of its liquor licensees as a condition of their licenses would constitute just such a qualification of the First Amendment. Utah cannot therefore rely on its Twenty-first Amendment powers to salvage its advertising restrictions.

## 4. Regulations "No More Restrictive Than Necessary"

Even if Utah's regulations satisfied Central Hudson's third part–for instance, if Utah's scheme for regulating alcohol advertising did not draw irrational distinctions among different types of alcohol–we conclude the regulations fail the fourth part as well. In Lorillard, the Supreme Court reaffirmed that a regulation of speech cannot be sustained unless there is evidence that the state "'carefully calculate[d] the costs and benefits associated with the

burden on speech imposed' by the regulations." Lorillard , 121 S. Ct. at 2425 (quoting Cincinnati v. Discovery Network, Inc. , 507 U.S. 410, 417 (1993)); see also Greater New Orleans , 527 U.S. at 188. There is no indication that Utah made any careful calculation of the costs associated with its speech restrictions.

In addition, both Coors and 44 Liquormart suggest that where the state's legitimate interests may be promoted through methods that do not restrict speech, those methods must be preferred over speech restrictions. In Coors, the Supreme Court declared that "the availability of . . . options . . . which could advance the Government's asserted interest in a manner less intrusive to . . . First Amendment rights, indicates that [the challenged statute] is more extensive than necessary." Coors, 514 U.S. at 491. And in 44 Liquormart , a plurality of the Court stated that:

> alternative forms of regulation that would not involve any restriction on speech would be more likely to achieve the State's goal of promoting temperance. As the State's own expert conceded, higher prices can be maintained either by direct regulation or by increased taxation. Per capita purchases could be limited as is the case with prescription drugs. Even educational campaigns focused on the problems of excessive, or even moderate, drinking might prove to be more effective.

44 Liquormart , 517 U.S. at 507 (plurality opinion) (citation omitted). Utah has not shown that nonspeech regulations would be an ineffective means to accomplish the ends it desires, or that its speech regulations are no more extensive than necessary.

Lorillard, Greater New Orleans, Coors and 44 Liquormart therefore require us to hold that Utah's regulations fail the fourth part of the Central Hudson test. [5]

## IV. Other Elements Necessary To Warrant Preliminary Injunctive Relief

Because Utah's regulations fail the Central Hudson test, ULBA has established the first element necessary for an injunction, a substantial likelihood that it will prevail on the merits. We now turn to the other elements that ULBA must establish in order to obtain a preliminary injunction. See Country Kids, 77 F.3d at 1283 (discussing the elements necessary to warrant injunctive relief).

ULBA argues that it is presumptively suffering irreparable injury, the second element, due to Utah's deprivation of its First Amendment rights. See Aplt's Br. at 35-36, citing Elrod v. Burns, 427 U.S. 347, 373 (1976). Although Elrod was not a Central Hudson commercial speech case, this presumption of irreparable injury has been applied in commercial speech cases in other circuits.

---

[5] Utah also asserts that its regulations are not a "virtual total ban" on speech and should therefore be assessed differently. See Aple's Br. at 29. In U.S. West, we stated that even in the commercial speech context, a ban placing only partial limits on speech is nevertheless subject to the same standard of First Amendment review that would be applied to a complete ban. See U.S. West, 182 F.3d at 1232 ("[T]he existence of alternative channels of communication . . . does not eliminate the fact that the . . . regulations restrict speech."); see also United States v. Playboy Entertainment Group, Inc., 529 U.S. 803, 812 (2000) (stating that in the context of strict scrutiny, "[t]he distinction between laws burdening and laws banning speech is but a matter of degree."). Utah's regulations still burden speech, even if they fall short of being a "virtual total ban."

See, e.g., Nordyke v. Santa Clara County, 110 F.3d 707, 710 (9th Cir. 1997); International Dairy Foods Ass'n v. Amestoy, 92 F.3d 67, 71 (2d Cir. 1996). We agree with ULBA that it is proper for us to assume irreparable injury due to the deprivation of ULBA's commercial speech rights.

With respect to the third element of the test for a preliminary injunction, we hold that the First Amendment injury to ULBA outweighs any prospective injury to Utah if an injunction were granted. Utah has introduced some evidence that advertising might increase alcohol consumption. See (III)(B)(3), supra. But even that evidence was contradicted by ULBA's submissions. See id. Because we concluded in our Central Hudson analysis that Utah's regulatory scheme is irrational, and hence unlikely to achieve its goals, there is no reason to think that Utah will be harmed more than ULBA if the advertising restrictions are enjoined. In the meantime, Utah unquestionably retains the power to attack alcohol-related problems through methods that do not restrict speech.

Finally, we come to the fourth element, whether an injunction would be adverse to the public interest. In A.C.L.U. v. Johnson, we held that an injunction that would block an unconstitutional New Mexico regulation of the Internet would not be "adverse to the public interest[,] as it will protect the free expression of the millions of Internet users both within and outside of the State of New Mexico." Johnson, 194 F.3d at 1163. Because we have held that Utah's challenged statutes

-28-

also unconstitutionally limit free speech, we conclude that enjoining their enforcement is an appropriate remedy not adverse to the public interest. See also Elam Constr., Inc. v. Regional Transp. Dist., 129 F.3d 1343, 1347 (10th Cir. 1997) (stating, in the context of a request for injunctive relief, that "[t]he public interest . . . favors plaintiffs' assertion of their First Amendment rights.").

## CONCLUSION

One additional statement by the Supreme Court is especially pertinent to our holding today:

> Advertising, however tasteless and excessive it sometimes may seem, is nonetheless dissemination of information as to who is producing and selling what product, for what reason, and at what price. So long as we preserve a predominantly free enterprise economy, the allocation of our resources in large measure will be made through numerous private economic decisions. It is a matter of public interest that those decisions, in the aggregate, be intelligent and well informed. To this end, the free flow of commercial information is indispensable. And if it is indispensable to the proper allocation of resources in a free enterprise system, it is also indispensable to the formation of intelligent opinions as to how that system ought to be regulated or altered. Therefore, even if the First Amendment were thought to be primarily an instrument to enlighten public decisionmaking in a democracy, we could not say that the free flow of information does not serve that goal.

Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc., 425 U.S. 748, 765 (1976) (citations and footnotes omitted).

The judgment of the district court is REVERSED. The case is REMANDED to the district court with instructions to ENJOIN the State of Utah

-29-

from enforcing Utah Code Ann. §§ 32A-12-401(2) and 32A-12-401(4). The district court is also instructed to ENJOIN the enforcement of Utah Code Ann. § 32A-12-104, to the extent that the enforcement of § 32A-12-104 conflicts with our holding in this case. The court may conduct further proceedings consistent with this opinion.