**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

SECURITIES AND EXCHANGE
COMMISSION,

     Plaintiff - Appellee,

v.

MANAGEMENT SOLUTIONS, INC., a
Texas corporation; WENDELL A.
JACOBSON; ALLEN R. JACOBSON,

     Defendants.

------------------------------

ERIC WELLING; PHEASANT WOOD,
LLC,

     Intervenors - Appellants.

and

GIL A. MILLER,

     Receiver - Appellee.

No. 19-4090
(D.C. No. 2:11-CV-01165-BSJ)
(D. Utah)

_____

**ORDER AND JUDGMENT**[*]
_____

---

    [*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Before **HOLMES**, **KELLY**, and **BACHARACH**, Circuit Judges.
_____

In this securities-fraud case, investors Eric Welling and Pheasant Wood, LLC, appeal from a district court order that accepted the court-appointed receiver's final report, terminated the receivership, and closed the case. Exercising jurisdiction under 28 U.S.C. 1291, we affirm.

## BACKGROUND

In December 2011, the Securities and Exchange Commission (SEC) filed a civil enforcement action in federal district court, alleging that Wendell and Allen Jacobson were committing "an ongoing offering fraud and Ponzi scheme" that had "raised more than $200 million from approximately 225 investors." Aplt. App., Vol. II at 398. The Jacobsons operated the scheme "under the umbrella of Management Solutions, Inc. [MSI]," *id.* at 399, which had the stated goal of identifying, rehabilitating, and reselling multi-family apartment communities, *id.* at 401.

The district court appointed John Beckstead as receiver and froze the assets of MSI and the Jacobsons. The appointment order directed Beckstead "to investigate the manner in which the financial and business affairs of the [r]eceivership [d]efendants were conducted and . . . institute such actions and legal proceedings, for the benefit and on behalf of the [r]eceivership [e]state, as the [r]eceiver deems necessary and appropriate." *Id.* at 431. The order granted Beckstead and his accounting team "reasonable compensation and expense reimbursement from the [r]eceivership [e]states," and it required Beckstead, "[a]t the close of the receivership," to "file a final fee application,

2

describing in detail the costs and benefits associated with all litigation and other actions pursued by the [r]eceiver during the course of the receivership." *Id.* at 435.

A year later, in December 2012, MSI and the Jacobsons agreed to the entry of a final judgment exceeding $260 million. As part of the judgment, Beckstead acknowledged his ongoing obligation to pursue fraudulent conduct in future actions against third parties.

Welling and Pheasant Wood were two of the many investors in this case. They moved to intervene in the receivership based on unpaid loans they had made to an entity controlled by Wendell Jacobson. The district court granted the motion, and they joined the case in February 2013.

In April 2014, the district court appointed Gil Miller as the new receiver, because Beckstead had decided to retire. Miller was the senior managing member of Rocky Mountain Advisory, LLC, which the district court had, a few weeks earlier, appointed "to provide consulting, investigation, accounting, and other services to [Beckstead]." *Id.* at 583; *see also id.* at 543-44.

As the new receiver, Miller moved to amend the appointment order to allow monthly interim compensation and reimbursement of expenses. In July 2014, the district court granted Miller's motion and ordered the submission of "a detailed statement of services rendered and expenses incurred by the [receiver and his team] for the month," and required that "[a]ny objection to the payment of fees or reimbursement of expenses in a [r]equest . . . be filed with the Court and served on the [n]otice [p]arties within ten (10) calendar days." Miller's Supp. App., Vol. IV at 1022-23.

3

Over the ensuing four years, Miller worked to resolve the remaining disputes regarding the receivership estate, including liquidating the remaining receivership properties. In a "Final Application for Compensation and Reimbursement of Expenses," filed in November 2018, Miller sought "approv[al] [of] all prior approved fees." *Id.*, Vol. XV at 4062, 4072. In the application, Miller stated that "[a]ll services and costs were reasonably necessary to the administration of the receivership estate and beneficial at the time the services were rendered," and that "[t]he SEC ha[d] reviewed and approved all requests." *Id.* at 4065. Welling and Pheasant Wood disagreed and sought an order "disgorg[ing] . . . fees paid to Miller and [Rocky Mountain Advisory]," alleging they had conflicts of interest "based on their engagement to consult for [a law firm that had represented Wendell Jacobsen and MSI] in connection with the SEC's investigation of [the Jacobsons], and because they . . . agree[d] to provide expert witness services for the State of Utah in its prosecution of the Jacobsons." Aplt. App., Vol. III at 586. The district court denied Welling and Pheasant Wood's motion, stating that Miller had carried out his duties as a receiver "in an <u>exemplary</u> fashion." Miller's Supp. App., Vol. XVII at 4476.

In April 2019, Miller filed his "Final Report and Motion to Terminate Receivership and Close Action." Aplt. App., Vol. IV at 906. Therein, he reported the payment of "100% of approved Secured Claims in the amount of $213,593,681" and "100% of approved Investor Claims in the amount of $139,578,138." *Id.* at 909 (boldface and underline omitted). Welling and Pheasant Wood objected, complaining that the report lacked "a final cost-benefit analysis of claims against third parties." *Id.* at

4

926. The district court held two hearings on the matter and denied the objection,[1] stressing that "nobody has raised specific problems with any receivership transaction . . . throughout the course of the receivership, including the periodic accounting that occurred and the applications for compensation that came before the Court." *Id.* at 950. Consequently, the district court terminated the receivership and closed the case.

Welling and Pheasant Wood now appeal, arguing that the district court erred by granting Miller's motion "without requiring a detailed cost-benefit analysis." Aplt. Opening Br. at 15-16.

## DISCUSSION
### I. Standard of Review

"It is generally recognized that the district court has broad powers and wide discretion to determine relief in an equity receivership." *SEC v. Vescor Capital Corp.*, 599 F.3d 1189, 1194 (10th Cir. 2010) (ellipsis and internal quotation marks omitted). Accordingly, we review the district court's order terminating the receivership and closing the case for an abuse of that discretion, *see SEC v. Scoville*, 913 F.3d 1204, 1213 (10th Cir.), *cert. denied*, 140 S. Ct. 483 (2019), which "occurs only when the trial court bases its decision on an erroneous conclusion of law or where there is no rational basis in

---

[1] At the May 15, 2019 hearing, Welling and Pheasant Wood asked the district court to delay closing the receivership so they could "see if there is more money out there." SEC's Supp. App. at 68. The district court noted that they had identified "nothing by way of a specific complaint as to a specific transaction involving a specific event," *id.* at 70, and it declared, "[W]e need to bring [the receivership] to an end," *id.* at 79.

the evidence for the ruling," *Utah Licensed Beverage Ass'n v. Leavitt*, 256 F.3d 1061, 1065 (10th Cir. 2001) (internal quotation marks omitted).

## II. Cost-Benefit Analysis

The crux of Welling and Pheasant Wood's appeal is that Miller and his team were paid too much. They state that Miller and his team were paid $38.4 million out of receivership assets but recovered only $2.6 million pursuing "seventy-five claims (including forty-five lawsuits) against third parties." Aplt. Opening Br. at 4. According to Welling and Pheasant Wood, the district court should have required Miller to submit a cost-benefit analysis justifying his "expensive and largely unsuccessful efforts" against third parties, especially "[i]n light of [his] conflict" of interest. *Id.* at 5. We disagree.

Although the district court included the requirement of a final cost-benefit analysis in its 2011 order appointing a receiver, nothing prevented the court from terminating the receivership and closing the case without having received such an analysis. Indeed, a district court has the inherent power "to manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases," which includes "the power to modify or rescind its orders at any point prior to final judgment in a civil case." *Dietz v. Bouldin*, 136 S. Ct. 1885, 1891-92 (2016).

As the district court noted in deciding this matter, it was time—after seven years and "3,500 docket entries," SEC's Supp. App. at 77—to bring the receivership to a close. The district court explained that Welling and Pheasant Wood had numerous opportunities throughout the receivership to contest Miller's handling of the receivership, but they failed to do so until the very end. In particular, just three months after Miller became the

6

receiver, the district court ordered Miller to submit monthly compensation and expense reports, and it established a process for contemporaneous objections, but Welling and Pheasant Wood made none. Under these circumstances, we cannot say that the district court abused its discretion in terminating the receivership and closing the case without receiving a cost-benefit analysis.[2]

To the extent Welling and Pheasant Wood contend otherwise based on their view that Miller was a conflicted receiver,[3] we are unpersuaded for two reasons. First, the receiver is not an agent of the parties; rather, he is "an officer or arm of the court[,] . . . appointed to assist the court in protecting and preserving, for the benefit of all parties concerned, the properties in the court's custody." *Crites, Inc., v. Prudential Ins. Co. of*

---

[2] Welling and Pheasant Wood point out that the requirement of a cost-benefit analysis was also contained in the SEC's Billing Instructions. But they do not indicate how those instructions could have confined the district court's discretion in terminating the receivership. Further, the SEC supported "allowing [Miller and his team] to be paid fully for the work that they have done and for there to be some closure." Miller's Supp. App., Vol. XVIII at 4664-65. *See SEC v. Byers*, 590 F. Supp. 2d 637, 644 (S.D.N.Y. 2008) (observing that "in a securities receivership, opposition or acquiescence by the SEC to the fee application will be given great weight" (brackets and internal quotation marks omitted)).

[3] Welling and Pheasant Wood assert that Miller had a conflict of interest due to (1) his consulting work for the Jacobsons during the SEC's investigation; (2) his being designated as an expert witness for the state in Utah's prosecution of the Jacobsons; (3) his accounting work for Beckstead during the receivership; and (4) his support of Beckstead's effort to establish the existence of a Ponzi scheme. But Welling and Pheasant Wood make no attempt to show how any of these grounds actually conflicted with Miller's duties as receiver for the court. Nor did they ever object to his appointment as receiver. They simply argue on appeal, under the rubric of "conflict of interest," that Miller's work before becoming the receiver should have influenced the district court to require a cost-benefit analysis. We reach only that limited argument.

7

*Am.*, 322 U.S. 408, 414 (1944). And according to the district court, Miller discharged his duties as receiver in an "<u>exemplary</u> fashion," recovering "100 cents on the dollar of [Welling and Pheasant Wood's] qualified claims." Miller's Supp. App., Vol. XVII at 4476. Second, Welling and Pheasant Wood do not explain why Miller's work in this case before becoming the receiver in 2014 necessitated his submission of a cost-benefit analysis in 2019. The district court found no such connection, and we will not upset that determination based on Welling and Pheasant Wood's mere conjecture that Miller and his team "squandered or wasted" receivership assets, Aplt. Opening Br. at 16.

## CONCLUSION

We affirm the district court's judgment.

Entered for the Court


Jerome A. Holmes
Circuit Judge