**BIOGANIC SAFETY BRANDS, INC., Plaintiff,**

v.

**Don AMENT, Colorado Commissioner of Agriculture, Defendant.**

**No. 01–B–1808.**

United States District Court, D. Colorado.

Nov. 20, 2001.

M. Miller Baker, Richard B. Rogers, Michael S. Nadel, McDermott, Will and Emery, Washington, DC, Timothy O'Neil, Snell & Wilmer, LLP, Denver, CO, for Plaintiff.

David L. Joeris, Attorney General's Office, Denver, CO, for Defendant.

Memorandum Opinion and Order

BABCOCK, Chief Judge.

Plaintiff Bioganic Safety Brands, Inc. (Bioganic) seeks injunctive and declaratory relief based on the following claims: 1) Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA) preemption; 2) 42 U.S.C. § 1983 Claim—First Amendment Violation; and 3) § 1983—Dormant Commerce Clause Violation. I conclude that pursuant to Fed.R.Civ.P. 65(a)(2) consolidation of the preliminary injunction application with a trial on the merits for Claims One, Two and Three is appropriate. Trial was held on November 16, 2001. At that time, the only material issue of fact con-

cerned irreparable injury. For the following reasons, I grant injunctive and declaratory relief on all claims.

## I.

## Background

Bioganic manufactures the insect repellent products "ShooBug Cool Breeze" and "ShooBug Spice Islands" (collectively, ShooBug). Declaration of Edward Grindstaff (Grindstaff Decl.) ¶ 12.

Under 40 C.P.R. § 152.25(g), ShooBug is a pesticide product exempt from regulation under the Federal Insecticide, Fungicide and Rodenticide Act (FIFRA), 7 U.S.C. § 136 *et seq.* Grindstaff Decl. ¶ 3. As an exempt pesticide, ShooBug is subject, however, to FIFRA labeling requirements under 40 C.F.R. § 152.25(g)(3)(iii). *Id.*

Section 152.25(g)(3)(iii) of Title 40 of the Code of Federal Regulations provides that exempt pesticide product labels "must not include any false and misleading labeling statements, including those listed in 40 CFR 156.10(a)(5)(i) through (viii)." Subsection (ix) of § 156.10(a)(5) is omitted from the prohibited categories of labeling statements. Subsection ix refers to "Claims as to the safety of the pesticide or its ingredients, including statements such as 'safe'. . . ." 40 C.F.R. § 156.10(a)(5)(ix).

By Pesticide Registration Notice 2000–6, dated May 7, 2000, the United States Environmental Protection Agency (EPA) stated that true safety claims on labels of exempt pesticides are not "false and misleading" claims for purposes of 40 C.F.R. § 152.25(g)(3)(iii). Grindstaff Decl. Ex. 1, p. 6. According to Plaintiff, in accordance with the EPA's guidance, Bioganic includes a true claim on ShooBug's label that the product is "Safe for Kids." *See* Grindstaff Decl. Ex. 2 (ShooBug label).

On October 3, 2000, Bioganic sought to register ShooBug with the Colorado Department of Agriculture ("CODA") for the

year January 1, 2001, to December 31, 2001. Grindstaff Decl. ¶ 5. At that time, Bioganic had arrangements to distribute ShooBug in Colorado on a limited basis through one national retail chain. *Id.* Under § 35–9–120, C.R.S. it is unlawful to distribute pesticide products within Colorado without prior registration of such products with CODA.

On November 24, 2000, the CODA informed Bioganic that its application for registration for ShooBug during 2001 was denied because, *inter alia,* ShooBug's safety claim on the label violated § 35–9–120(1)(g). *See id.* Ex. 3 (CODA notice of denial of ShooBug application).

Section 35–9–120(1)(g) provides, in pertinent part, that it is unlawful to make representations through "any media" as to "the safety of any pesticide or device." Rule 4.2(b) of the CODA Pesticide Act Rules and Regulations (CODA Pesticide Rules) provides that "[l]abels and labeling for pesticide products exempted from federal registration pursuant to 40 C.F.R. § 152.25(g) (1998) . . . shall (1) comply with 40 C.F.R. § 152.25(g) (1998), as incorporated above; and (2) comply with the act and these rules." CODA Pesticide Rule 6.1(i) prohibits safety claims on pesticide labels.

At considerable expense and business inconvenience, Bioganic deleted the claim "Safe for Kids" from the label for those ShooBug products to be distributed by the national retailer within Colorado during 2001. Bioganic then submitted a revised application for registration with CODA on January 21, 2001. Grindstaff Decl. ¶ 7. On or about May 17, 2001, CODA approved the application for registration, based in part on Bioganic's removal of the claim "Safe for Kids" from the label of Colorado-bound ShooBug products. *Id.* at ¶ 8. To avoid violating § 35–9—120(1)(g), during 2001 Bioganic has refrained from making

local advertising claims in Colorado that ShooBug is "Safe for Kids," thus impacting the effectiveness of its Colorado advertising. *Id.*

To distribute ShooBug in Colorado during 2002, Bioganic is required to re-register ShooBug with the CODA, as its current registration expires on December 31, 2001, pursuant to C.R.S. § 35–9–107(g)(4). Grindstaff Decl. ¶ 9. Bioganic believes CODA will grant Bioganic's renewal application only if ShooBug's label does not contain a "Safe for Kids" claim. *Id.*

Bioganic wishes and intends to sell ShooBug in Colorado and other states in 2002 on a far wider scale than in 2001 through several national retail chains, as opposed to one. Grindstaff Decl. ¶ 10. Bioganic is presently engaged in discussions with several potential customers about selling the ShooBug product in Colorado in 2002. *Id.* Bioganic also wishes and intends to advertise ShooBug in 2002 through a national advertising campaign that will include claims that ShooBug is "Safe for Kids." *Id.* at ¶ 11.

If Bioganic is forced to remove the claim "Safe for Kids" from its ShooBug label to distribute ShooBug in Colorado during 2002, Bioganic will incur considerable additional expense. Bioganic believes this would dissuade some, if not all, of Bioganic's potential national retailer customers from agreeing to market the product because of the burden of segregating Colorado-labeled ShooBug products from non-Colorado labeled ShooBug products in interstate distribution systems. Thus, according to Bioganic Colorado's regulation of the ShooBug label will thwart Bioganic's ability to fully market ShooBug in 2002. In addition, Bioganic contends that it is impossible to quantify the economic injury to Bioganic.

If Bioganic is disallowed from making the claim that ShooBug is "Safe for Kids" in any advertising within Colorado during 2002, Bioganic will be precluded from making the claim "Safe for Kids" in its planned national advertising campaign, most significantly by television, because the national advertising campaign will necessarily reach into Colorado. If Bioganic wishes to distribute and advertise ShooBug as "Safe for Kids" outside of Colorado in 2002 without any advertising "spillage" into Colorado, it will be necessary to undertake significantly more expensive inventory, distribution and market advertising campaigns inside and outside of Colorado, and the local market advertising in Colorado will be less effective because it will not include the "Safe for Kids" claim. Bioganic's marketing ability is adversely affected nationally and in Colorado. Moreover, differentiated advertising and labeling causes consumer confusion.

According to Bioganic, Colorado is the only state in the Union that prohibits it from making the claim that ShooBug is "Safe for Kids" on product labels and in advertising. Grindstaff Decl. ¶ 15. Bioganic claims that this prohibition violates the Dormant Commerce Clause and the First Amendment of the U.S. Constitution.

## II.

### Law

Bioganic seeks to enjoin Defendant from enforcing § 35–9–120(1)(g) and CODA Pesticide Rules 4.2(b)(2) and 6.1(i). An injunction is an equitable remedy that invokes the sound discretion of the district court. *Lundgrin v. Claytor,* 619 F.2d 61, 63 (10th Cir.1980). An injunction may issue if the movant clearly shows: (1) actual success on the merits; (2) irreparable injury if the injunction is not granted; (3) that injury outweighs any harm the injunction will cause the opposing party; and (4) the injunction is in the public interest. *Amoco Prod. Co. v. Village of Gambell, Alaska,* 480 U.S. 531, 546 n. 12, 107 S.Ct. 1396, 94

L.Ed.2d 542 (1987); *SCFC ILC, Inc. v. Visa USA, Inc.*, 936 F.2d 1096, 1098 (10th Cir.1991).

■ The nature of the injunction further increases the movants' burden. The following types of injunctions are disfavored and require the movant to satisfy an even heavier burden of showing that the four factors listed above weigh heavily and compellingly in movant's favor before such an injunction may be issued: (1) an injunction that disturbs the status quo; (2) an injunction that is mandatory as opposed to prohibitory; and (3) an injunction that affords the movant substantially all the relief he may recover at the conclusion of a full trial on the merits.... *SCFC ILC*, 936 F.2d at 1096–99. Here, Bioganic seeks a mandatory injunction. The movant must show that on balance, the four factors weight heavily and compelling in its favor. *Id.* I have applied this heightened standard in this case.

### III.

### Claims

### A. Claim One—FIFRA Preemption

1. *Merits of Claim One based on Preemption*

a. Preemption Law

■■ State laws that conflict with federal law are invalid under the Supremacy Clause of the United States Constitution, Art. VI, cl. 2; *Wisconsin Public Intervenor v. Mortier*, 501 U.S. 597, 605, 111 S.Ct. 2476, 115 L.Ed.2d 532 (1991). When considering preemption, however, courts should "start with the assumption that the historic police powers of the States [are] not to be superseded by ... Federal Act unless that [is] the clear and manifest purpose of Congress." *Cipollone v. Liggett Group*, 505 U.S. 504, 516, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992). The "ultimate touchstone" of preemption analysis, there-

fore, is "the purpose of Congress." *Cipollone* at 516, 112 S.Ct. 2608.

■ Express preemption of state law exists where the language of the federal statute explicitly prohibits state regulation of specific areas. *Id.* Where Congress has expressly included a provision in a federal statute defining the preemptive reach of that law, "matters beyond that reach are not preempted." *Id.* at 517, 112 S.Ct. 2608. *See also id.* at 523, 112 S.Ct. 2608 ("strong presumption against preemption" dictates narrow construction of the precise statutory language at issue). Where express preemption occurs, therefore, state law is preempted only to the extent that the language of the federal statute at issue clearly manifests congressional intent to supercede state law. *See Wisconsin* at 604–605, 111 S.Ct. 2476.

■ Even without explicit statutory language that preempts state law, implicit preemption can still occur to the extent that a state law actually conflicts with federal law. *Id.; Wisconsin*, 501 U.S. at 605, 111 S.Ct. 2476. "Such a conflict arises when 'compliance with both federal and state regulations is a physical impossibility,' *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142–143, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963), or when a state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress,' *Hines v. Davidowitz*, 312 U.S. 52, 61 S.Ct. 399, 85 L.Ed. 581 (1941)." *Wisconsin* at 605, 111 S.Ct. 2476. A finding of implicit field preemption should be limited to those situations where federal law "so thoroughly occupies a legislative field 'as to make reasonable the inference that Congress left no room for the States to supplement it.' " *Cipollone* at 516, 112 S.Ct. 2608. With these principles in mind, I turn to the pertinent federal and state statutory and regulatory provisions.

i. Federal Statutory and Regulatory Scheme

Section 24 of FIFRA, 7 U.S.C. § 136v, provides:

(a) In general. A State may regulate the sale or use of any federally registered pesticide or device in the State, but only if and to the extent the regulation does not permit any sale or use prohibited by this Act.

(b) Uniformity. Such State shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under this subchapter.

*Id.*

The pertinent FIFRA statutory provisions and implementing regulations provide as follows:

FIFRA, Title 7 U.S.C. § 136w(4)(b) provides:

(b) Exemption of pesticides

The Administrator may exempt from the requirements of this subchapter by regulation any pesticide which the Administrator determines either (1) to be adequately regulated by another Federal agency, or (2) to be of a character which is unnecessary to be subject to this subchapter in order to carry out the purposes of this subchapter.

40 C.F.R. § 152.25 states:

Exemptions for pesticides of a character not requiring FIFRA regulation.

The pesticides or classes of pesticides listed in this section have been determined to be of a character *not requiring regulation under FIFRA, and are therefore exempt from all provisions of FIFRA* when intended for use, and used, only in the manner specified.

(g)(3) Other conditions of exemption. All of the following conditions must be met for products to be exempted under this section:

. . . . .

(iii) The product must not include any false and misleading labeling statements, including those listed in 40 CFR 156.10(a)(5)(i) through (viii).

40 C.F.R. § 156.10 states, in pertinent part:

§ 156.10 Labeling requirements.

(a) General—

(1) Contents of the label. Every pesticide product shall bear a label containing the information specified by the Act and the regulations in this Part....

(5) False or misleading statements. Pursuant to section 2(q)(1)(A) of the Act, a pesticide or a device declared subject to the Act pursuant to § 152.500, is misbranded if its labeling is false or misleading in any particular including both pesticidal and non-pesticidal claims. Examples of statements or representations in the labeling which constitute misbranding include:

(i) A false or misleading statement concerning the composition of the product;

(ii) A false or misleading statement concerning the effectiveness of the product as a pesticide or device;

(iii) A false or misleading statement about the value of the product for purposes other than as a pesticide or device;

(iv) A false or misleading comparison with other pesticides or devices;

(v) Any statement directly or indirectly implying that the pesticide or device is recommended or endorsed by any agency of the Federal Government;

(vi) The name of a pesticide which contains two or more principal active ingredients if the name suggests one or more but not all such principal active ingredients even though the names of the other ingredients are stated elsewhere in the labeling;

(vii) A true statement used in such a way as to give a false or misleading impression to the purchaser;

(viii) Label disclaimers which negate or detract from labeling statements required under the Act and these regulations;

(ix) *Claims as to the safety of the pesticide or its ingredients, including statements such as "safe," "nonpoisonous," "noninjurious," "harmless" or "nontoxic to humans and pets" with or without such a qualifying phrase as "when used as directed"*; and

(x) Non-numerical and/or comparative statements on the safety of the product....

*Id.* (emphasis added).

As set out above, 40 C.F.R. § 152.25(g)(3)(iii) omits safety claims from the enumerated categories of prohibited labeling statements on exempt pesticide products. *See id.* Moreover, the EPA has issued a pesticide registration notice confirming that FIFRA regulations permit true safety claims on exempt pesticide products. *See* Grindstaff Decl. Ex. 1, p. 6. ("Products that meet the criteria for exemption from regulation may make safety claims if true.). I give weight to this EPA statement because EPA's interpretation of the pertinent regulations is entitled to deference from if it is reasonable and consistently applied, though no deference is warranted if the interpretation is inconsistent with the legislative intent reflected in the language and structure of the statute or if there are other compelling indications that it is wrong." *See Mountain Side Mobile Estates Partnership v. Secretary of Hous-*

*ing & Urban Dev.,* 56 F.3d 1243, 1248 (10th Cir.1995). *New Mexico Dep't of Human Servs. v. Department of Health & Human Servs. Health Care Fin. Admin.,* 4 F.3d 882, 884–85 (10th Cir.1993) (citations omitted).

b. State Statutes, Rules and Regulations

Colorado Pesticide Act provides in pertinent part:

35–9–120. Prohibited acts

(1) It is unlawful and a violation of this article for any person:

(g)(I) To make false, misleading, deceptive, or fraudulent representations through any media regarding:

(A) Pesticides or any aspect of their use, including, but not limited to, representations regarding their safety and effectiveness; ....

(II) It is a false representation to make claims as to the safety of any pesticide or device or their components or ingredients, including, but not limited to, such claims as "safe", "noninjurious", "harmless", or "nontoxic to humans and pets", with or without such qualifying phrases as "when used as directed" and "when properly applied."

§ 35–9–120, C.R.S.

■ According to Bioganic, by prohibiting exempt pesticides such as ShooBug from making safety claims on labels, § 35–9–120(1)(g) and CODA Pesticide Rules 4.2(b)(2) and 6.1(i) impose labeling requirements that are "in addition to or different from" those required under FIFRA,. *See* 7 U.S.C. § 136v(b). Bioganic contends, therefore, that FIFRA § 136v(b) preempts § 35–9–120(1)(g) and CODA Pesticide Rules 4.2(b)(2) and 6.1(i) as they apply to safety claims on the label of ShooBug and other exempt pesticide products. I agree.

In *Arkansas–Platte & Gulf Partnership v. Van Waters & Rogers, Inc.,* 981 F.2d 1177, 1179 (10th Cir.) *(Arkansas–Platte II), cert. denied,* 510 U.S. 813, 114 S.Ct. 60, 126 L.Ed.2d 30 (1993), the Tenth Circuit held that FIFRA § 136v(b):

> simply deprives the state of power to adopt any [pesticide labeling] regulation We believe Congress circumscribed the area of [pesticide] labeling and packaging and preserved it only for federal law. With the same stroke, Congress banned *any form of state regulation,* and the interdiction law is clear and irrefutable.

*Id.* at 1179. (emphasis added).

Defendant contends, however, that notwithstanding the language of 7 U.S.C. § 136v(b) and *Arkansas–Platte II,* if the EPA opts to exercise its authority under Section 25(b) of FIFRA, 7 U.S.C. § 136w(b), to "exempt" a pesticide "from the requirements of this Act by regulation," that exemption necessarily frees the states from the § 136v(b) labeling preemption provision.

As an initial matter, Defendant fails to perceive the distinction between a pesticide product that is exempt from FIFRA *regulation* requirements, as opposed to a product free from FIFRA *labeling* requirements. *See* Response Brief, p. 15. Pursuant to 40 C.F.R. § 152.25(g)(3), the exemption is expressly conditioned on the product's label satisfying specific requirements including the requirement that the product must not include any false and misleading labeling statements set out in 40 CFR 156.10(a)(5)(i) through (viii). Specifically not mentioned is 40 CFR 156.10(a)(5)(ix) defining claims as to the safety of the pesticide including statements such as "safe" or "nontoxic to humans and pets."

■ When construed and harmonized together, the language of FIFRA and the implementing regulations compels the conclusion that pesticide products that are exempt from FIFRA regulation requirements are not exempt from FIFRA labeling requirements. Thus, a label statement such as "safe for kids" does not constitute a false and misleading statement as to exempt pesticides under FIFRA.

In contrast, § 35–9–120(1)(g)(II) prohibits statements such as "safe", "noninjurious", "harmless", or "nontoxic to humans and pets," with or without such qualifying phrases as "when used as directed" and "when properly applied." Thus, § 35–9–120(1)(g)(II) conflicts with FIFRA § 136v(b) which forbids a state to impose requirements for labeling different from those required under FIFRA. *See* 7 U.S.C. § 136v(b).

*Arkansas–Platte & Gulf Partnership v. Van Waters & Rogers, Inc.,* 959 F.2d 158 (10th Cir.1992)*(Arkansas–Platte I ),* affirmed in *Arkansas–Platte II,* held that Colorado's imposition of additional label requirements on pesticide manufacturers was preempted "by virtue of the direct conflict posed with federal uniform regulation of pesticides" based on the "belie[f] [that] Congress intended to occupy the field of pesticide labeling regulation." *Arkansas–Platte I* at 164. According to Defendant, these cases are distinguishable because the Tenth Circuit issued *Arkansas–Platte (II)* before the EPA exempted certain pesticides from federal regulation under 40 C.F.R. § 152.25(g). Thus, the statements in both cases with regard to FIFRA preemption of state pesticide labeling regulation should be construed as being limited to pesticides that are in fact subject to federal regulation, not those which the EPA has expressly exempted from regulation pursuant to its congressional mandate in § 25(b) of FIFRA, 7 U.S.C. § 136w(b).

The Tenth Circuit has not addressed the effect of the EPA's exemption of certain pesticides from federal regulation under 40

C.F.R. § 152.25(g) with respect to *Arkansas–Platte I* and *Arkansas–Platte II*. Other circuits addressing FIFRA labeling preemption after the implementation of 40 C.F.R. § 152.25(g) conclude that state imposed labeling requirements that are "in addition to or different from those required" are expressly preempted. *See* FIFRA § 136v(b). *See e.g. Hawkins v. Leslie's Pool Mart, Inc.* 184 F.3d 244, 249 (3d Cir.1999); *Kuiper v. American Cyanamid Co.,* 131 F.3d 656 (7th Cir.1997); *Grenier v. Vermont Log Bldgs., Inc.,* 96 F.3d 559, 563–65 (1st Cir.1996) *citing Arkansas–Platte I* and *Arkansas–Platte II.*

Under these circumstances, I conclude that Bioganic has established its success on the merits of Claim One. I hold that Section 35–9–120(1)(g)(II) and the CODA Regulations are preempted by FIFRA and its implementing regulations as to labeling requirements.

■ FIFRA also preempts § 35–9–120(1)(g) to the extent that it purports to bar advertising claims that merely repeat claims made on pesticide labels. *See Kuiper,* 131 F.3d at 662–663 (following decisions by Fourth, Ninth, and Eleventh Circuits that FIFRA preempts state law tort claims based on representation in advertising "when the challenged advertising merely reiterates the label"), *cert. denied,* 523 U.S. 1137, 118 S.Ct. 1839, 140 L.Ed.2d 1090 (1998).

### 2. *Irreparable Injury*

Bioganic contends that Colorado's enforcement of its pesticide labeling statute in the face of FIFRA preemption constitutes irreparable injury, by depriving Bioganic of the "federally created right to have only one regulator." *Trans World Airlines, Inc. v. Mattox,* 897 F.2d 773, 784 (5th Cir.) (finding irreparable injury for purposes of preliminary injunction in state attempt to regulate area expressly preempted by federal statute), *cert. denied,* 498 U.S. 926, 111 S.Ct. 307, 112 L.Ed.2d 261 (1990). *Mattox* concerned the total preemption of all state laws relating to rates, routes or services of airlines. The *Mattox* court was concerned that if states were permitted to enforce their various laws, the airlines would be subjected to the demands and criteria of numerous legislatures rather than being required to comply only with federal laws and regulations. In this case, the narrow preemption concerns only labeling requirements. I am not persuaded that I may find irreparable injury based solely on *Mattox.*

■ However, Colorado's ban on safety claims on the ShooBug label will irreparably injure Bioganic by dissuading potential wholesale retail customers from agreeing to sell ShooBug because of the difficulties of segregating Colorado-labeled ShooBug from non-Colorado-labeled ShooBug in interstate distribution networks. Also, Colorado's ban on safety claims in advertising will irreparably injure Bioganic by preventing a uniform national advertising campaign for ShooBug and by reducing the effectiveness of Colorado market advertising.

■ Irreparable injury occurs when the court would be unable to grant an effective monetary remedy after a full trial because such damages would be inadequate or difficult to ascertain. *See Kikumura v. Hurley,* 242 F.3d 950, 963 (10th Cir.2001) *citing Tri–State Generation & Transmission Ass'n, Inc., v. Shoshone River Power, Inc.,* 874 F.2d 1346, 1354 (10th Cir.1989). A potential loss of profit often can be subsequently remedied through an award of monetary damages. In this case however, Bioganic does not claim damages and Defendant advised at trial that it would assert immunity if damages were claimed. I conclude that the injury to Bioganic, by its inherent nature, is irreparable because damages would be

inadequate and difficult to ascertain, and, in any event, probably would be precluded by an immunity defense.

Further, any of the options proposed by Defendant to comply with § 35–9–120(1)(g) and CODA Rules 4.2.(b)(2) and (6.1(i)) would eliminate a competitive advantage and increase Bioganic's cost of doing business. Under these circumstances, I conclude that eliminating a competitive advantage would result in further irreparable harm to Bioganic.

### 3. *Balance of Equities*

■ In the context of an application for a preliminary injunction to enforce federal preemption, where a state purports to regulate an area preempted by Congress, there is no injury to the state to weigh. *Mattox,* 897 F.2d at 784. "Since Congress expressly preempted this area of regulation, the states are not injured by the injunction." *Id.*

### 4. *Public Interest*

■ The public interest element of an application for a preliminary injunction is satisfied when the injunction seeks to enforce express federal preemption from state encroachment because Congress has already found that exclusive federal regulation in such matters is in the public interest. *Mattox,* 897 F.2d at 784.

## B. Claim Two for Violation of the First Amendment

### 1. *Bioganic's Success on the Merits of its First Amendment Claim*

Count II of Bioganic's Complaint alleges that Bioganic is entitled to injunctive relief under 42 U.S.C. § 1983 because Section 35–9–120(1)(g) violates the First Amendment of the U.S. Constitution, *see* Complaint ¶¶ 29–30, by unconstitutionally restricting Bioganic's fundamental right to freedom of speech.

■ The First Amendment protects commercial speech. *Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.,* 425 U.S. 748, 763–65, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976). In determining whether a restriction on commercial speech can withstand First Amendment scrutiny, courts apply the four-part analysis set forth by the Supreme Court in *Central Hudson Gas & Electric Corp. v. Public Service Commission of New York,* 447 U.S. 557, 566, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980). Under *Central Hudson,* a court:

> must determine whether the expression is protected by the First Amendment. For commercial speech to come within that provision, it at least must concern lawful activity and not be misleading. Next, we ask whether the asserted governmental interest is substantial. If both inquiries yield positive answers, we must determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest.

*Central Hudson,* 447 U.S. at 566, 100 S.Ct. 2343. The Supreme Court has made it clear that "the least restrictive means" is not the standard; instead, the case law requires a reasonable "'fit between the legislature's ends and the means chosen to accomplish those ends, ... a means narrowly tailored to achieve the desired objective.'" *Florida Bar v. Went For It, Inc.,* 515 U.S. 618, 632, 115 S.Ct. 2371, 132 L.Ed.2d 541 (1995) *quoting Board of Trustees of State Univ. of N.Y. v. Fox,* 492 U.S., 469, 480, 109 S.Ct. 3028, 106 L.Ed.2d 388 (1989). Courts must also determine "whether the challenged regulation advances [Defendant's] interest in a direct and material way." *Edenfield v. Fane,* 507 U.S. 761, 767, 113 S.Ct. 1792, 123 L.Ed.2d 543 (1993). It is Defendant's burden to establish a "reasonable fit" between its

legitimate interests and its choice of regulation to serve those interests. *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 415, 113 S.Ct. 1505, 123 L.Ed.2d 99 (1993); *see also Adolph Coors Co. v. Bentsen*, 2 F.3d 355, 357 (10th Cir.1993). The government interest must be substantial and it must carefully calculate the costs and benefits associated with the burden on speech imposed by its regulation. *Fox*, 492 U.S. at 480, 109 S.Ct. 3028.

Defendant argues that: 1) the restrictions of § 35–9–120(1)(g) are constitutional as applied because they mirror the restrictions in FIFRA; 2) the speech prohibited by § 35–9–120(1)(g) is inherently misleading; and 3) Defendant has a substantial interest in protecting the public from claims that pesticides are safe. According to Bioganic, these arguments are insufficient to mitigate the statute's violation of the First Amendment.

### a. FIFRA

Bioganic replies that it is not challenging FIFRA's application on First Amendment grounds because its injuries flow from § 35–9–120(1)(g), not FIFRA. The fact that Bioganic has not challenged FIFRA, however, does not establish that § 35–9–120(1)(g) is constitutional as applied to Bioganic.

### b. Inherently Misleading

 Under *Central Hudson*, the first question is whether the speech regulated by § 35–9–120(1)(g) is protected by the First Amendment. The answer turns on whether the regulated speech concerns lawful activity and is not misleading. The phrase "misleading" in *Central Hudson* has been refined to mean "inherently misleading." Commercial speech that *is* merely "potentially misleading" is still entitled to First Amendment protection. *See In re R.M.J.*, 455 U.S. 191, 203, 102 S.Ct. 929, 71 L.Ed.2d 64 (1982). Inherently misleading advertising may be prohibited en-

tirely. But the States may not place an absolute prohibition on ... potentially misleading information ... if the information also may be presented in a way that is not deceptive. *Id.*

Defendant contends that the speech prohibited by § 35–9–120(1)(g) is not entitled to First Amendment protection "because both Congress and the General Assembly of the State of Colorado have determined that, as a matter of law, claims of safety on pesticide labels are inherently misleading." Response Brief, p. 25. Whether speech is "inherently misleading," however, is a determination for the court, not the legislature, to make. If a legislature could place speech outside of First Amendment protection by simply declaring the speech "inherently misleading," the First Amendment to the United States would be subject to *de facto* modification by state legislatures. Clearly, this would violate the Supremacy Clause.

 It is not enough for the legislature to claim that speech is "inherently misleading." The restricted speech must actually be inherently misleading. *See, e.g., Adolph Coors Co. v. Brady*, 944 F.2d 1543, 1547 n. 2 (10th Cir.1991) ("The House [of Representatives of the United States] argued below that alcohol content disclosure is inherently misleading. The district court rejected this contention."). In the Tenth Circuit, for "a particular mode of communication to be inherently misleading, it must be incapable of being presented in a way that is not deceptive." *Revo v. Disciplinary Bd. of the Supreme Ct.*, 106 F.3d 929, 933 (10th Cir.), *cert. denied* 521 U.S. 1121, 117 S.Ct. 2515, 138 L.Ed.2d 1017 (1997). Because there is a constitutional presumption in favor of speech, a defendant has the burden of proof to rebut that presumption with evidence that the speech is inherently misleading. *See id.* at 932–33 *citing Peel v.*

*Attorney Disciplinary Comm'n of Ill.,* 496 U.S. 91, 111, 110 S.Ct. 2281, 110 L.Ed.2d 83 (1990); *see also Brady,* 944 F.2d at 1550 ("The party urging the prohibition on speech has the burden of justifying such a restriction."). Whether speech is inherently misleading is "a question of law." *Peel v. Attorney Registration and Disciplinary Commission of Ill.,* 496 U.S. 91, 108, 110 S.Ct. 2281, 110 L.Ed.2d 83 (1990).

Defendant offers no evidence that a claim that ShooBug is safe for kids is incapable of being presented in a way that is not deceptive. Nor does Defendant proffer any case authority to support a conclusion that a claim that ShooBug is "Safe for Kids" is inherently misleading.

 In contrast, a body of law supports the proposition that Bioganic's proposed speech is entitled to First Amendment protection. In *Pearson v. Shalala,* 164 F.3d 650 (D.C.Cir.1999), the government prohibited manufacturers of dietary supplements from including on their labels claims characterizing the relationship of the supplement to a disease or health-related condition without first obtaining FDA approval. *Id.* at 651. The government argued that health claims lacking "significant scientific agreement" are inherently misleading because they have such an awesome impact on consumers as to make it virtually impossible for them to exercise any judgment at the point of sale. The court found that "this contention is almost frivolous." *Id.* at 655. Here, Colorado's contention that a "Safe for Kids" label is inherently misleading because it would make it virtually impossible for them to exercise any parental judgment is similarly unavailing.

In *Revo,* the Supreme Court of New Mexico's disciplinary board argued that direct mail letters to personal injury victims are inherently misleading because they "inevitably convey a false message that soliciting lawyers are more experienced, tougher, more skillful, and better qualified than non-soliciting lawyers." *Revo,* 106 F.3d at 933. The Tenth Circuit rejected that argument stating the mere fact that someone is misled by a particular communication is not proof that the communication is inherently misleading. *Id.* Here, Defendant has not demonstrated that anyone would be misled by the "Safe for Kids" label.

 In *Association of Nat'l Advertisers v. Lungren,* 44 F.3d 726 (9th Cir.1994), *cert. denied,* 516 U.S. 812, 116 S.Ct. 62, 133 L.Ed.2d 25 (1995), a California statute restricted advertisers from using the terms "ozone friendly," "biodegradable," "photodegradable," "recyclable," or "recycled." *Id.* at 727. The state argued that those terms were inherently misleading. The *Lungren* court determined that whether or not the terms were misleading depended on a variety of "circumstantial factors" that were "objectively ascertainable, with some difficulty, by the consumer." *Id.* at 731. While the terms might be misleading in some circumstances, in others they would not be. The regulated speech, therefore, was only "potentially misleading"—not "inherently misleading"—and, therefore, entitled to First Amendment protection. *Id.* at 730–31. Thus, speech is only "inherently misleading" if it would be misleading in all circumstances.

 Defendant has not shown and does not argue that Bioganic's claim would be misleading in all circumstances. Rather, as in *Lungren,* it depends on the circumstances. Bioganic concedes that ShooBug may not be safe for a toddler in circumstances where a parent fails to provide adequate supervision. Defendant concedes, it is safe for "a healthy, ten year-old child who can read." Response Brief, p. 27. If there are circumstances in which the speech is not misleading, it is entitled to the protection of the First Amendment. *Lungren,* 44 F.3d at 731–32.

Moreover, if a claim that ShooBug is "Safe for Kids" were inherently misleading, any misleading impression can be cured by a disclaimer. *See Zauderer v. Office of the Disciplinary Counsel of the Supreme Ct.*, 471 U.S. 626, 651, 105 S.Ct. 2265, 85 L.Ed.2d 652 (1985) ("Thus, in virtually all our commercial speech decisions to date, we have emphasized that because disclosure requirements trench much more narrowly on an advertiser's interests than do flat prohibitions on speech, '[warnings] or [disclaimers] might be appropriately required in order to dissipate the possibility of consumer confusion or deception.'") *quoting R.M.J.*, 455 U.S. at 201, 102 S.Ct. 929. Defendant claims that "there is no realistic way to counter the misleading impression that such pesticide is safe for all kids of all ages with whatever mental or physical health problems they may have." Response Brief, p. 27. It is implausible, however, to believe that consumers exposed to the "Safe for Kids" claim would believe that ShooBug is safe for all kids of all ages and all possible health problems or disabilities without any responsible adult supervision. More importantly, Bioganic's label sets forth appropriate disclaimers. *See* Ex. 1. By employing such disclaimers, Bioganic presents the claim that ShooBug is "Safe for Kids" in "a way that is not deceptive." *Revo*, 106 F.3d at 933. As a matter of law, the "Safe for Kids" claim is not inherently misleading.

Having concluded that the expression "Safe for Kids" is protected by the First Amendment and not inherently misleading, I address the remaining *Central Hudson* analysis.

c. Whether § 35–9–120(1)(g) Directly Advances the Governmental Interest Asserted

According to Defendant, Colorado "has a substantial interest in protecting the public from claims that pesticides are 'safe,' which by their very nature are inherently misleading." Response Brief, p. 26. Defendant misapprehends the analysis prescribed by *Central Hudson*. If I conclude the claims that pesticides are safe are, in fact, inherently misleading, then Defendant need not establish any substantial interest, because a finding of "inherently misleading" ends the inquiry. *See Pearson*, 164 F.3d at 655. Where, as here, I examine the factor of substantial state interest, I have necessarily determined that the prohibited speech is "not misleading." *See Central Hudson*, 447 U.S. at 566, 100 S.Ct. 2343.

Defendant has not met its burden of "building a record adequate to clearly articulate and justify" the state interest in banning truthful claims of safety with respect to all pesticides. *See U.S. West, Inc. v. FCC*, 182 F.3d 1224, 1234 (10th Cir. 1999), *cert. denied*, 530 U.S. 1213, 120 S.Ct. 2215, 147 L.Ed.2d 248 (2000). Moreover, Defendant has not met its burdens under the third and fourth steps of *Central Hudson* analysis to show both that the statute protects the state interest asserted and that the statute is not more restrictive than necessary. Indeed, Defendant does not even attempt to satisfy these burdens.

Bioganic has demonstrated success on the merits of Claim Two for violation of the First Amendment.

2. *Irreparable Injury*

▇▇▇▇ Where · First· Amendment rights are violated, irreparable injury is presumed. *Utah Licensed Bev. Ass'n v. Leavitt*, 256 F.3d 1061, 1076 (10th Cir. 2001); *see also Kikumura*, 242 F.3d at 963 ("When an alleged constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary."); *accord International Dairy Foods Ass'n v. Amestoy*, 92 F.3d 67, 71 (2nd

Cir.1996)(in the commercial speech context, it "is established that the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury"). Defendant fails to demonstrate that it would suffer any injury at all if an injunction were issued allowing Bioganic to market ShooBug as "Safe for Kids." Moreover, the First Amendment injury to Bioganic outweighs any injury caused by the suspension of a regulatory scheme that prohibits nonmisleading speech. *See Leavitt,* 256 F.3d at 1076. Finally, it is in the public interest to vindicate First Amendment rights by enjoining the enforcement of statutes that infringe upon them. *Id; see also Elam Constr., Inc. v. Regional Transp. Dist.,* 129 F.3d 1343, 1347 (10th Cir.1997) ("The public interest also favors plaintiffs' assertion of their First Amendment rights."), *cert. denied,* 523 U.S. 1047, 118 S.Ct. 1363, 140 L.Ed.2d 513 (1998).

### 3. *Balance of Harms*

The First Amendment injury to Bioganic outweighs any prospective injury to Colorado if the injunction is granted. *See Leavitt,* 256 F.3d at 1076. Defendant has not demonstrated that its regulatory scheme is rational and, hence, likely to achieve its goals. Thus, Bioganic's First Amendment injury outweighs any potential, undefined harm to Defendant if the advertising and labeling restrictions are enjoined. *See id.*

### 4. *Public Interest*

In *Leavitt,* the Tenth Circuit stated "[b]ecause we have held that the [State's] challenged statutes also unconstitutionally limit free speech, we conclude that enjoining their enforcement is an appropriate remedy not adverse to the public interest." *Leavitt,* 256 F.3d at 1076. Indeed, the "public interest … favors plaintiffs' assertion of their First Amendment rights." *Elam Constr., Inc.,* 129 F.3d at 1347. It is

"clearly in the public interest to ensure that governmental agencies …fully comply with the law, especially when that law concerns the parameters of a party's First Amendment rights to effectively communicate its [safety] message to consumers." *Pearson,* 130 F.Supp.2d at 119.

### C. Claim Three— § 1983 Claim for Dormant Commerce Clause Violation

#### 1. *Success on the Merits*

The United States Constitution gives Congress the power to regulate interstate commerce. *See* U.S. CONST. art. I, § 8, cl. 3 ("The Congress shall have Power … To regulate Commerce … among the several States …."). Since the mid–1800's, the Supreme Court has interpreted this affirmative grant of authority to Congress as also establishing an implicit rule of law known as the "Dormant Commerce Clause." Not found in the text of the Constitution, this doctrine is a "self-executing limitation on state authority to enact laws imposing substantial burdens on interstate commerce even in the absence of Congressional action." *United Egg Producers v. Department of Agric. of the Commonwealth of Puerto Rico,* 77 F.3d 567, 570 (1st Cir.1996). The Dormant Commerce Clause "denies the states the power unjustifiably to discriminate against or burden the interstate flow of articles of commerce." *Oregon Waste Sys. v. Department of Envtl. Quality,* 511 U.S. 93, 98, 114 S.Ct. 1345, 128 L.Ed.2d 13 (1994).

The classic example of a Dormant Commerce Clause violation is a state regulation that "discriminates against interstate commerce either on its face or in practical effect." *American Target Adver., Inc. v. Giani,* 199 F.3d 1241, 1254 (10th Cir.2000). Bioganic concedes that there is no evidence available showing that § 35–9120(1)(g) discriminates in favor of in-state

economic interests. However, a statute also may violate the Dormant Commerce Clause if it unduly burdens interstate commerce, even if it does not discriminate against out-of-state commerce. A state regulation that is not discriminatory and treats in-and out-of-state commerce even-handedly is subject to a balancing test and will be upheld "if it serves a 'legitimate public interest,' its effects on interstate commerce are only 'incidental,' and the burden imposed on interstate commerce is not 'clearly excessive in relation to the putative local benefits.' " *Giani*, 199 F.3d at 1254 *quoting Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970).

In addition, while it is true that the states have a particular interest in local regulations relating to public health and safety, "[t]he various exercises by the States of their police power stand ... on an equal footing" and "are of equal dignity when measured against the Commerce Clause.... Like any local law that conflicts with federal regulatory measures, state regulations that run afoul of the policy of free trade reflected in the Commerce Clause must bow." *Bibb v. Navajo Freight Lines, Inc.*, 359 U.S. 520, 529, 79 S.Ct. 962, 3 L.Ed.2d 1003 (1959) (citations omitted). Moreover, the fact that a regulation touches on health or safety does not preclude a Dormant Commerce Clause inquiry. This view "would mean that the Commerce Clause of itself imposes no limitations on state action ... save for the rare instance where a state artlessly discloses an avowed purpose to discriminate against interstate goods." *Hunt*, 432 U.S. at 350, 97 S.Ct. 2434

Based on its erroneous analysis of Claim One, Defendant argues that because the products at issue in this case are not subject to federal regulation, Colorado's regulation of their labeling does not conflict with federal law. Defendant misap-

prehends the nature of the Dormant Commerce Clause. A state law can violate the Dormant Commerce Clause even if the state law does not conflict with federal law. It is enough for the state's law to conflict with other states' laws. *See, e.g., Bibb*, 359 U.S. 520, 79 S.Ct. 962, 3 L.Ed.2d 1003. (Illinois law requiring trucks to use a particular type of mud flap violated the Dormant Commerce Clause because no other state required that type of mud flap and because at least one other state required a different type of mud flap); *Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977) (a North Carolina law requiring all apple containers to display either the USDA grade or none at all violated the Dormant Commerce Clause because it robbed Washington apple growers of competitive advantages that they had developed over the years by using their own stricter scheme).

Further, a state's law may create an undue burden on interstate commerce, and thus run afoul of the Dormant Commerce Clause, even if it does not conflict with any other law, whether state or federal. *See generally, e.g., Pike*, 397 U.S. 137, 90 S.Ct. 844, 25 L.Ed.2d 174 (an Arizona law placed unconstitutional burden on interstate commerce because it would require a company to spend $200,000 to build a cantaloupe-packing plant in Arizona instead of shipping them 30 miles to existing plant in California); *Pete's Brewing Co. v. Whitehead*, 19 F.Supp.2d 1004, 1017 (W.D.Mo.1998) (finding that one-time cost of replacing beer labels to comply with one state's unique law would unduly burden interstate commerce).

Here, given the outcome of Bioganic's preemption claim, Colorado imposes a unique requirement not in place in any other state. Bioganic has demonstrated success on the merits of Claim Three.

## 2. *Irreparable Harm*

■ Violation of Commerce Clause rights is itself an irreparable injury. *ACLU v. Johnson,* 194 F.3d 1149, 1163 (10th Cir.1999) *citing American Libraries Ass'n v. Pataki,* 969 F.Supp. 160, 168 (S.D.N.Y.1997) ("deprivation of the rights guaranteed under the Commerce Clause constitutes irreparable injury."). By showing that the Colorado statute imposes an undue burden on the interstate commerce and thus violates the Dormant Commerce Clause, Bioganic has established that it will suffer an irreparable injury if an injunction is not granted.

Moreover, economic and competitive disadvantages may constitute irreparable damage. Defendant does not dispute that Colorado is the only state that will not allow the claim that ShooBug is "Safe for Kids" on its product labels and in its advertising. According to Bioganic, under Colorado's current law, if Bioganic wishes to sell ShooBug in Colorado, Bioganic must choose between the following four options:

1. Bioganic may obliterate the "Safe for Kids" claim on product labels and, where feasible, in its advertising;

2. Bioganic may design a special label and special advertisements exclusively for the Colorado market, omitting the "Safe for Kids" claim, as Bioganic did in 2001 to obtain registration to sell ShooBug in Colorado;

3. Bioganic could redesign the product label and advertising for all markets, so that none would bear the "Safe for Kids" claim;

4. Bioganic could elect not to market ShooBug in Colorado.

Bioganic contends that each of these options present a form of irreparable harm to Bioganic. Obliterating the "Safe for Kids" claim on actual product labels and in advertising causes the product to have a damaged appearance and may cause customers not to buy it. *See Hunt,* 432 U.S. at 338, 97 S.Ct. 2434 (noting obliteration gives a product a damaged appearance).

Designing special labels and advertisements for the Colorado market substantially raises the cost of business in a number of ways. In addition to the costs associated with developing the alternative labels and advertisements, Bioganic and its customers would be forced to segregate the "Colorado-only" product from the "non-Colorado" product to ensure that the correct items are shipped to the correct markets. This option is costly and less efficient. Moreover, the use of special labels and advertisements creates a risk of customer confusion as to whether the "Colorado" product and the "non-Colorado" product are the same. In particular, Colorado customers who travel to other states and see ShooBug with the "Safe for Kids" claim may logically conclude that the ShooBug product sold in Colorado is not "Safe for Kids" because it is not so labeled and may then buy some other product. The same is true of Colorado customers who see advertisements for ShooBug from sources in other states.

Redesigning labels for all markets so as to discontinue use of the "Safe for Kids" claim would be undesirable because it would cause Bioganic to lose whatever legitimate competitive advantage it may gain by making that claim in the other 49 states where it is legally permitted to make that claim. Also, abandoning the Colorado market would deny Bioganic any business in Colorado.

■ Similar to the options available in *Washington State Apple,* these four options are the sort of harm and undue burden on interstate commerce, that is to be prevented by the Dormant Commerce Clause. *See generally id.* at 350, 97 S.Ct. 2434 ("the challenged statute has the prac-

tical effect of ... burdening interstate sales of Washington apples ....").

Defendant asserts that in addition to Plaintiff's four options, Bioganic has the option of redesigning the label omitting the "Safe for Kids" claim in all 50 states. Response Brief, p. 30. This option would eliminate a competitive advantage, and would increase the cost of doing business by requiring Bioganic to redesign its advertisements and repackage the product. While increased costs alone does not constitute irreparable harm, I conclude that eliminating a competitive advantage would result in irreparable harm to Bioganic.

### 3. *Balance of Harms*

As explained above, there exists a threat of harm to Bioganic if it is denied an injunction. Defendant argues that allowing the injunction would result in "complete deregulation of these products ... allow[ing] its competitors to both increase the concentrations of active ingredients to a dangerous level ... with no governmental review of such products' safety or efficacy claims." Response Brief, p. 23, 31. This argument ignores the authority and effect of FIFRA and its implementing regulations.

Moreover, the actual ShooBug product is the same product regardless whether the label says "Safe for Kids." This product is currently for sale in Colorado without the "Safe for Kids" label. It is the same product sold in other states with the "Safe for Kids" label. Accordingly, if an injunction were granted, Colorado would not be forced to allow a different product to be sold within its borders.

All other states permit ShooBug to be sold with a label bearing the "Safe for Kids" claim. There is no evidence that harm has resulted in these other states. There is no reason to conclude that Colorado would face some hitherto unknown problem if the label were permitted here.

On balance, the threatened injury to Bioganic outweighs any injury the Defendant may suffer under an injunction.

### 4. *Public Interest*

Defendant does not address this prong in any substantive manner stating that "Plaintiff's request for ... injunctive relief fails to satisfy the ...remaining criteria for the issuance of a[n] ... injunction for the reasons discussed previously with respect to Plaintiff's request for injunctive relief on preemption grounds." *See* Response Brief, p. 31.

Bioganic states that the proposed injunction is not adverse to the public interest based on substantially the same reasons why Defendant will not be injured if the injunction is granted. Particularly, the product is already for sale in Colorado and will continue to be sold in Colorado, assuming *arguendo* that Bioganic's registration is renewed for 2002. The only difference between the current Colorado product and the product sold in other states with the "Safe for Kids" label is the label.

Accordingly, IT IS ORDERED, ADJUDGED, DECREED, and DECLARED that:

1) § 24(b) of the Federal Insecticide, Fungicide, and Rodenticide Act, Title 7 U.S.C. § 136v(b) preempts Section 35–9–120(1)(g), C.R.S. and Colorado Department of Agriculture Pesticide Rules 4.2(b)(2) and 6.1(i) as they apply to safety claims on the labels of and advertising for exempt pesticide products;

2. Defendant is ENJOINED as to Bioganic Safety Brands, Inc. from enforcing Section 35–9–120(1)(g), C.R.S. and Colorado Department of Agriculture Pesticide Rules 4.2(b)(2) and 6.1(i) to the extent they are preempted by § 24(b) of Federal In-

secticide, Fungicide, and Rodenticide Act 7 U.S.C. § 136v(b);

3. that by prohibiting Bioganic from making true and non-misleading claims on its ShooBug labels and in advertising that ShooBug is "Safe for Kids," section 35–9–120(1)(g), C.R.S. and Colorado Department of Agriculture Pesticide Rules 4.2(b)(2) and 6.1(i) VIOLATE the First Amendment to the United States Constitution;

4. Defendant is ENJOINED as to Bioganic Safety Brands, Inc. from enforcing section 35–9–120(1)(g), C.R.S. and Colorado Department of Agriculture Pesticide Rules 4.2(b)(2) and 6.1(i) in violation of the First Amendment to the United States Constitution;

5. that by prohibiting Bioganic from making true and non-misleading claims on its ShooBug labels and in advertising that ShooBug is "Safe for Kids," section 35–9–120(1)(g), C.R.S. and Colorado Department of Agriculture Pesticide Rules 4.2(b)(2) and 6.1(i) VIOLATE the Commerce Clause of the United States Constitution;

6. Defendant is ENJOINED as to Bioganic Safety Brands, Inc. from enforcing section 35–9–120(1)(g), C.R.S. and Colorado Department of Agriculture Pesticide Rules 4.2(b)(2) and 6.1(i) in violation of the Commerce Clause;

7. the Clerk of the Court SHALL ENTER JUDGMENT consistent with this Order;

8. Bioganic Safety Brands, Inc. is awarded costs upon filing a bill of costs within ten (10) days from the date judgment enters.