**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**July 12, 2005**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

PACIFIC FRONTIER, a Nevada
corporation; J & L DISTRIBUTING, a
Nevada corporation; REDWOOD
DIVISION PRO CLUB 100%, a
California corporation; ERIC
DESMOND; STEVEN MANTZ;
WILLIAM WALSH; JASMINE
JARAMILLO; LISA WALKER;
AMBER DALTON; TRAVIS
MCBRIDE,

      Plaintiffs-Appellees/Cross-
      Appellants,

v.

PLEASANT GROVE CITY, a
municipal corporation; JIM
DANKLEF, in his official capacity as
Mayor of Pleasant Grove City; TOM
PAUL, in his official capacity as
Police Chief of Pleasant Grove City;
FRANK MILLS, in his official
capacity as Pleasant Grove City
Manager; JEFF WILSON; CAROL
HARMER; KEITH CORY; DAROLD
MCDADE; MARK ATWOOD, in their
official capacities as members of the
Pleasant Grove City Council;
ERNESTO FERRON,

      Defendants-Appellants/Cross-
      Appellees.

Nos. 04-4010 and 04-4018

**Appeal from the United States District Court
for the District of Utah
(D.C. No. 2:02-CV-1205 TC)**

Peter Stirba, (Gary R. Guelker with him on the briefs), Stirba & Associates, Salt Lake City, Utah, for the Defendants-Appellants/Cross-Appellees.

Craig L. Taylor, (Charles R. Ahlstrom with him on the briefs), Craig L. Taylor, P.C., Kaysville, Utah, for the Plaintiffs-Appellees/Cross-Appellants.

Before **LUCERO**, **MCKAY,** and **MURPHY**, Circuit Judges.

**LUCERO**, Circuit Judge.

Burdened by the City of Pleasant Grove's ordinance establishing a solicitors licensing procedure, plaintiffs – individuals and entities engaged in selling Kirby vacuum cleaners through door-to-door solicitations – sued under 42 U.S.C. § 1983 claiming that the licensing ordinance violated their First Amendment commercial speech rights. The case proceeded to a preliminary injunction hearing, following which the district court found that, in addition to satisfying the other factors of the preliminary injunction test, plaintiffs have a substantial likelihood of showing that two provisions of the ordinance requiring solicitors to provide their fingerprints and post a $1,000 bond violate their commercial speech rights. We review the grant of such preliminary injunctions

- 2 -

for abuse of discretion and conclude on the record before us that the district court did not abuse its discretion.  We therefore **AFFIRM** the grant of injunctive relief.

**I**

To "protect the local citizenship against crime and to preserve the private property, peace, and comfort of the occupants of the private residents [sic] in the city," Pleasant Grove enacted Chapter 5.48 of the Pleasant Grove City Code ("Ordinance"), which requires individuals to obtain a license before engaging in door-to-door solicitation.  When applying for a license, solicitors must provide Pleasant Grove with, inter alia, the following:  (1) proof of age, address, and a "legally recognized form of identification;" (2) two photographs of the applicant; (3) a set of fingerprints taken by the Department of Public Safety; (4) a $20 fee to cover the cost of processing the registration; (5) a $1,000 bond to be returned ninety days after "the solicitor informs the City that the [sic] or she has terminated solicitations within the City, unless the City has good cause to believe that legal action has been or may be brought against the solicitor related to the solicitation activities of the solicitor;" (6) a $100 annual fee; and (7) "such information as the police department shall reasonably require."  In addition, Pleasant Grove requires solicitors to submit to a background check before obtaining a license.

Pacific Frontier, Inc. is a distributor of Kirby vacuum cleaners. It engages independent contractor dealers who perform door-to-door solicitations and in-home demonstrations of Kirby vacuums. Because it considered the costs of complying with the Ordinance's licensing requirements to be "prohibitive," Pacific Frontier declined to apply for a license in Pleasant Grove.[1] Its independent dealers nonetheless proceeded to engage in door-to-door solicitations in Pleasant Grove. Pleasant Grove police arrested eight such dealers for soliciting without a license.

Seven of those who were arrested ("individual plaintiffs") joined three corporations – Pacific Frontier, J & L Distributing, Inc., and Redwood Division Pro Club 100%, Inc. – in filing a complaint in federal district court asserting that the Ordinance violated their First Amendment right to free speech and burdened interstate commerce. The plaintiffs sought, inter alia, a permanent injunction against further enforcement of the Ordinance, a declaratory judgment that the Ordinance is unconstitutional, and compensatory and special damages. In response, Pleasant Grove filed a motion to dismiss arguing that Younger v. Harris, 401 U.S. 37 (1971), required federal abstention due to the pending

---

[1] Pleasant Grove had misconstrued its Ordinance for some time and demanded a $100 fee per solicitor for each seven day period, leading to a potential fee of $5,200 per year as opposed to the $100 fee per year required by the Ordinance. It was not until the preliminary injunction hearing in this matter that Pleasant Grove changed its interpretation.

criminal actions against the individual plaintiffs. To avoid dismissal of their federal complaint, and their claims for relief under § 1983, the individual plaintiffs pled no contest to the criminal charges and agreed to pay the resulting fines under protest.

After deciding that Pleasant Grove's dismissal motion was moot, the district court proceeded to hear arguments on the plaintiffs' motion for a preliminary injunction. Plaintiffs did not challenge most of Pleasant Grove's licensing procedure, electing to seek an injunction against only three provisions: the Ordinance's annual fee, bond, and fingerprinting requirements. At the hearing, Captain Cody Cullimore of the Pleasant Grove City Police Department testified to prior crimes committed by door-to-door salespeople. Specifically, he related that the department had received complaints of thefts occurring when solicitors were performing demonstrations inside homes, one complaint of a solicitor committing sexual assault, and reports of residential burglaries after solicitors had canvassed a particular neighborhood. Additionally, Cullimore testified that solicitors had defrauded citizens by taking money for products and not delivering the goods. On cross-examination, he acknowledged that police involvement with solicitors, when compared to police responses to other businesses, was "minimal." In eleven years, the police department received 160 complaints relating to door-to-door solicitation. By contrast, in a ten month

period in 1997, the department received over 2,000 complaints on "issues impacting business." Moreover, nearly half of the 160 calls about solicitors involved complaints that solicitors were operating without a license. Cullimore also admitted that there were no instances in which the fingerprints disclosed that a solicitor should not receive a license, and that the fingerprints had never been used to investigate or prosecute a crime.

City Attorney Christine Peterson, author of the Ordinance, explained that the fingerprint requirement deterred solicitors from committing crime. In support of the bond requirement, she testified that "quite often door-to-door salespeople will collect money at the door for a product, and then we can't find them. . . . And in my mind that was a safeguard for the citizens to allow them to have some sort of recourse in case they were bilked out of money." She acknowledged that no citizen has ever made a claim on the bond. Moreover, plaintiffs presented unrefuted evidence that Pleasant Grove has no procedure in place through which an aggrieved citizen can assert a claim on the bond.

On consideration of the evidence and arguments, the district court enjoined Pleasant Grove from enforcing the bond and fingerprint requirements of the Ordinance. The court based its decision on the Ordinance's impact on commercial speech and did not rule on plaintiffs' Commerce Clause argument. Because Pleasant Grove acknowledged and amended its misinterpretation of the

Ordinance, the district court concluded that "[t]he $100 fee licensing requirement is no longer at issue here." Pleasant Grove appealed, arguing that the district court abused its discretion in enjoining enforcement of the bond and fingerprint provisions. Plaintiffs cross-appealed, asserting that the district court should have enjoined the Ordinance's annual fee requirement and should have ruled on the Commerce Clause argument.

## II

Before turning to the merits of the court's ruling, we must address Pleasant Grove's argument that plaintiffs lack standing to contest the Ordinance's constitutionality.[2] Pleasant Grove contends that because plaintiffs challenged the Ordinance without first applying for a license, they lack standing to advance their First Amendment arguments. We decline to hold that solicitors must first apply for and be denied a license before challenging a licensing ordinance's constitutionality.

---

[2] Although Pleasant Grove did not raise this argument below, we nonetheless consider it. See Board of County Comm'rs v. W.H.I., Inc., 992 F.2d 1061, 1063 (10th Cir. 1993) ("Standing may be raised at any time in the judicial process."); Powder River Basin Resource Council v. Babbitt, 54 F.3d 1477, 1484 (10th Cir. 1995) (same); Baca v. King, 92 F.3d 1031, 1034 (10th Cir. 1996) ("Although issues not raised below normally may not be considered on appeal, defenses challenging this court's jurisdiction may be raised at any time.")

In Association of Community Organizations for Reform Now, ("ACORN")

v. Golden, 744 F.2d 739 (10th Cir. 1984), we heard a challenge to a municipal

ordinance requiring activists to obtain an exemption prior to engaging in door-to-

door canvassing. The City of Golden argued that "ACORN should be required to

apply for and be denied an exemption before bringing a facial challenge to the

ordinance." Id. at 744. We held that "[a]pplying for and being denied a license

or an exemption is not a condition precedent to bringing a facial challenge to an

unconstitutional law." Id. Further, we concluded that "[t]his principle is not

limited to cases in which an individual or organization is defending against

criminal charges. It also permits such facial challenges by suits for injunctive or

declaratory relief against laws requiring an exemption or permit." Id. The

Supreme Court has also heard First Amendment challenges to door-to-door

canvassing permit requirements where the plaintiffs did not apply for a permit.

Watchtower Bible and Tract Soc'y of N.Y. v. Village of Stratton, 536 U.S. 150

(2002). We conclude that our decision in ACORN should extend to cases

involving commercial speech.[3]

---

[3] Pleasant Grove argues that because commercial speech is traditionally subject to government regulation, and enjoys less protection than pure speech, we should impose a heightened standing requirement when reviewing commercial speech challenges. The city misconstrues the purpose of the ACORN rule, which is to allow plaintiffs to bring facial challenges to statutes and regulations without first requiring them to submit to potentially unconstitutional requirements.

Although failure to apply for a license does not serve as a barrier to the facial challenge of an ordinance, plaintiffs must nonetheless meet the ordinary requirements for standing. Under these requirements, plaintiffs must establish that they have suffered an "injury in fact," that there is a causal connection between the injury suffered and the conduct in question, and that it is likely, not speculative, that a favorable decision will redress the injury. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992). Plaintiffs suffer an injury in fact where they have endured "an invasion of a legally protected interest which is (a) concrete and particularized, . . . and (b) actual or imminent, not conjectural or hypothetical." Id. (quotation and citations omitted).

Plaintiffs in the case before us have suffered an injury in fact. Although claim of a "subjective chill," Laird v. Tatum, 408 U.S. 1, 13-14 (1972), is insufficient to gain standing, a litigant who suffers an "ongoing injury resulting from the statute's chilling effect on his desire to exercise his First Amendment rights" does have standing to sue. Wilson v. Stocker, 819 F.2d 943, 946 (10th Cir. 1987).[4] We have concluded that a plaintiff establishes standing when "a credible threat of prosecution or other consequences following from the statute's

_____

[4] We have permitted plaintiffs who did not apply for a permit to sue governments imposing permit requirements where "[t]he chilling financial reality of the bond unnecessarily interferes with First Amendment freedoms." American Target Adver., Inc. v. Giani, 199 F.3d 1241, 1249 (10th Cir. 2000) (discussing the merits of the constitutional claim as opposed to standing).

enforcement" is shown. <u>D.L.S. v. Utah</u>, 374 F.3d 971, 975 (10th Cir. 2004). Because failure to submit to fingerprinting and refusal to pay a fee and post a bond necessarily lead to a denial of a license, and because soliciting without a license led to arrest and prosecution in this case, plaintiffs have shown sufficient "consequences following from the statute's enforcement," <u>id.</u>, to show an injury in fact. <u>See Lujan</u>, 504 U.S. at 560. Furthermore, plaintiffs' injury is directly traceable to enforcement of the Ordinance, which would be redressed by a judicial conclusion that the Ordinance is unconstitutional. <u>Id.</u>

Thus we are satisfied that Article III's standing requirement permit plaintiffs to bring this action, leading us to consider Pleasant Grove's argument that prudential considerations counsel against our hearing this case. Pleasant Grove argues that because the individual plaintiffs pled no contest in city court to the charge of soliciting without a license, all plaintiffs – including the corporate entities – are precluded from seeking an injunction against enforcement of the Ordinance in federal court. We may answer whether the district court abused its discretion in granting injunctive relief so long as any one of the plaintiffs could properly have sought the injunction below. Because issue preclusion does not apply to at least one of the plaintiffs – J & L Distributing – we will consider the merits of this case without determining whether the other plaintiffs are precluded from presenting their claims for relief.

Federal courts must "give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so." Allen v. McCurry, 449 U.S. 90, 96 (1980). In Utah, issue preclusion requires the presence of all four of the following factors:

> (i) the party against whom issue preclusion is asserted must have been a party to or in privity with a party to the prior adjudication; (ii) the issue decided in the prior adjudication must be identical to the one presented in the instant action; (iii) the issue in the first action must have been completely, fully, and fairly litigated; and (iv) the first suit must have resulted in a final judgment on the merits.

Collins v. Sandy City Bd. of Adjustment, 52 P.3d 1267, 1270 (Utah 2002). "The legal definition of a person in privity with another, is a person so identified in interest with another that he represents the same legal right." Searle Bros. v. Searle, 588 P.2d 689, 691 (Utah 1978). "[F]inal adjudication of [a] plaintiff's claims bars subsequent litigation concerning the same subject matter against officers or owners of a closely held corporation, partners, co-conspirators, agents, alter egos or other parties with similar legal interests." Press Publ'g, Ltd. v. Matol Botanical Int'l, Ltd., 37 P.3d 1121, 1128 (Utah 2001). A person is not in privity with another simply because of the showing of "identical rights" at issue in the earlier litigation, "some interest in the outcome of the case," or even "employ[ment of] the same attorney;" rather, the person "must have had some

control over the [earlier] litigation." Baxter v. Utah Dep't of Transp., 705 P.2d 1167, 1169 (Utah 1985).

None of the individual plaintiffs who entered pleas of no contest were in any way associated with J & L Distributing, much less "so identified in interest" with that corporation that they "represent the same legal right." Searle Bros., 588 P.2d at 691. As J & L Distributing was not "a party to or in privity with a party to the prior adjudication," it is not precluded from challenging the Ordinance's constitutionality. Collins, 52 P.3d at 1270.[5] Therefore, we may analyze whether the district court abused its discretion in granting J & L Distributing's motion for injunctive relief.[6]

---

[5] Whether the individual plaintiffs, or Pacific Frontier and Pro Club, are precluded from seeking damages under § 1983 due to the no contest pleas remains an issue that the district court must resolve. We need not answer that question to evaluate the district court's grant of a preliminary injunction. Importantly, the Utah Court of Appeals recently held that "an unconditional guilty plea does not operate as a waiver of a facial constitutional challenge to a statute, because such a challenge is jurisdictional in nature." State v. Norris, 97 P.3d 732, 737 (Utah App. 2004). The Utah Supreme Court granted certiorari in that case to answer the following question: "Whether an unconditional guilty plea waives a defendant's appellate challenge to the facial constitutionality of the statute under which the defendant was charged." State v. Norris, 106 P.3d 743 (Utah 2004). Resolution of that question will likely guide the district court's determination of whether the individual plaintiffs and Pacific Frontier and Pro Club are precluded from seeking relief under § 1983.

[6] Pleasant Grove filed a letter pursuant to Fed. R. App. P. 28(j) arguing that the principle of judicial estoppel, adopted by this court in Johnson v. Lindon City Corporation, 405 F.3d 1065 (10th Cir. 2005), precludes plaintiffs from challenging the Ordinance's constitutionality. In Lindon City, plaintiffs, in

(continued...)

- 12 -

# III

Although a preliminary injunction is an exceptional form of relief, we cannot conclude that the district court abused its discretion by enjoining the Ordinance's bond and fingerprint provisions. See Dominion Video Satellite, Inc. v. Echostar Satellite Corp., 269 F.3d 1149, 1153 (10th Cir. 2001) ("This court reviews the grant of a preliminary injunction for abuse of discretion"). When reviewing for an abuse of discretion, "the district court's decision is overturned only if it is arbitrary, capricious, whimsical, or manifestly unreasonable." United States v. Austin, 231 F.3d 1278, 1281 (10th Cir. 2000) (quotation omitted). Under this deferential standard, we affirm the grant of injunctive relief.

---

[6](...continued)
exchange for a generous plea deal, had signed pleas in abeyance admitting that they were guilty of assault and then proceeded to sue the city for unlawful arrest and imprisonment under § 1983. Because plaintiffs had, in exchange for leniency, admitted to actions justifying their arrest, we concluded that they could not seek § 1983 relief on the basis of unlawful arrest. In reaching this conclusion, we applied the doctrine of judicial estoppel, which provides that "[w]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." Id. at 1069 (quotation omitted). Judicial estoppel is inapplicable to the case before us. Plaintiffs admitted to no facts in city court, but rather pled no contest to the criminal charges under protest. Moreover, in the present litigation, plaintiffs do not dispute any facts that would support a conviction for soliciting without a license. The positions that plaintiffs have taken in the earlier criminal proceedings and in the present § 1983 litigation are entirely consistent.

To obtain a preliminary injunction, a movant must show: (1) substantial likelihood of prevailing on the merits; (2) irreparable injury if the injunction is denied; (3) greater injury to the movant absent the injunction than that which the opposing party will suffer under the injunction; and (4) lack of adverseness to the public interest. Utah Licensed Bev. Ass'n v. Leavitt, 256 F.3d 1061, 1065-66 (10th Cir. 2001). Any motion for injunctive relief that seeks to alter the status quo, such as the motion in this case, "must be more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course." O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft, 389 F.3d 973, 975 (10th Cir. 2004) (en banc), cert. granted sub nom Gonzales v. O Centro Espirita Beneficiente Uniao Do Vegetal, 125 S. Ct. 1846 (2005).[7]

## A

A municipality has the burden of justifying its regulation even on a motion to enjoin enforcement of an ordinance. Utah Licensed Bev., 256 F.3d at 1073. Because Pleasant Grove has not met its burden in this case, plaintiffs have shown a substantial likelihood of prevailing on the merits.[8]

---

[7] The Ordinance at issue in this case was enforced by Pleasant Grove for approximately two years prior to the arrests giving rise to this litigation.

[8] The Supreme Court has recognized that personal solicitation is imbued with important First Amendment interests:

(continued...)

- 14 -

To defend a regulation against a First Amendment challenge, a municipality must assert "a substantial interest to be achieved by restrictions on commercial speech." Cent. Hudson Gas & Elec. Corp. v. Public Serv. Comm'n, 447 U.S. 557, 564 (1980). Additionally, the restriction must directly advance that substantial interest. If the regulation "provides only ineffective or remote support for the government's purpose," it will not be upheld. Id. Finally, the regulation is unconstitutional "if the governmental interest could be served as well by a more limited restriction on commercial speech." Id. Pleasant Grove "must demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree." Edenfield, 507 U.S. at 771.[9]

[8](...continued)
Unlike many other forms of commercial expression, solicitation allows direct and spontaneous communication between buyer and seller. A seller has a strong financial incentive to educate the market and stimulate demand for his product or service, so solicitation produces more personal interchange between buyer and seller than would occur if only buyers were permitted to initiate contact. Personal interchange enables a potential buyer to meet and evaluate the person offering the product or service and allows both parties to discuss and negotiate the desired form for the transaction or professional relation. Solicitation also enables the seller to direct his proposals toward those consumers who he has a reason to believe would be most interested in what he has to sell. For the buyer, it provides an opportunity to explore in detail the way in which a particular product or service compares to its alternatives in the market.

Edenfield v. Fane, 507 U.S. 761, 766 (1993).

[9] Of course, if a municipality required licenses of those engaging in pure

(continued...)

Pleasant Grove's asserted interest in passing the Ordinance is to "protect the local citizenship against crime and to preserve the private property, peace, and comfort of the occupants of the private residents [sic] in the city." All parties concede that Pleasant Grove has asserted substantial interests to be achieved by the Ordinance,[10] but the parties dispute whether the Ordinance's bond and fingerprint provisions directly advance these asserted interests and whether the regulations restrict more speech than necessary. Finding that Pleasant Grove failed to show that the bond and fingerprint requirements had any effect on the problems allegedly caused by door-to-door solicitors, and that Pleasant Grove failed to show that its interests could not be served adequately by a more limited

[9](...continued)
political speech – such as those canvassing on behalf of a candidate for office – the regulation would be subject to much more stringent review than that applied in this case. See Edenfield, 507 U.S. at 767 ("laws restricting commercial speech, unlike laws burdening other forms of protected expression, need only be tailored in a reasonable manner to serve a substantial state interest in order to survive First Amendment scrutiny.").

[10] Their concession is appropriate given longstanding Supreme Court precedent recognizing a municipality's right to protect its residents' peaceful enjoyment of their homes and to prevent crime. See, e.g., Carey v. Brown, 447 U.S. 455, 471 (1980) ("Preserving the sanctity of the home, the one retreat to which men and women can repair to escape from the tribulations of their daily pursuits, is surely an important value. . . . The State's interest in protecting the well-being, tranquility, and privacy of the home is certainly of the highest order in a free and civilized society."); Hynes v. Oradell, 425 U.S. 610, 616-617 (1976) ("the Court has consistently recognized a municipality's power to protect its citizens from crime and undue annoyance by regulating soliciting and canvassing.").

restriction on speech, the district court concluded that the bond and fingerprint provisions of the Ordinance do not meet the final two Central Hudson requirements.

First, we conclude that the district court did not abuse its discretion in finding that Pleasant Grove failed to meet its burden of showing a "reasonable fit" between its asserted interest and the bond provision. Mainstream Mktg. Servs. v. FTC, 358 F.3d 1228, 1237 (10th Cir. 2004). Pleasant Grove defends the bond as necessary to protect consumers who may pay for a product but do not receive it or to compensate homeowners whose property is damaged during the course of an in-home sales demonstration. Belying Pleasant Grove's defense is plaintiffs' uncontested factual allegation that the city has no mechanism through which an aggrieved resident could make a claim on a bond. This fact alone confirms the district court's conclusion that the bond provision does not "provide effective support for the government's purposes." Id. at 1238. Pleasant Grove has also failed to show why state criminal laws are inadequate to deter fraud, or why state tort law provides insufficient relief to homeowners whose property may be inadvertently damaged. Furthermore, other provisions of the Ordinance, such as the background check, make it less likely that residents will confront salespersons who engage in fraudulent or tortious activity. See American Target, 199 F.3d at 1249 ("vigorous oversight diminish[es] the likely need for a victim

compensation fund. An ounce of prevention here is preferable to a pound of cure."). Pleasant Grove has failed to show that the bond provision, unaccompanied by any procedure to recompense victims and embedded within a scheme that effectively deters criminal and tortious conduct, mitigates the alleged harm "to a material degree." Greater New Orleans Broadcasting Ass'n v. United States, 527 U.S. 173, 188 (1999) (quoting Edenfield, 507 U.S. at 770-71).

In addition, other ordinances, such as the National Institute of Municipal Law Officers' ("NIMLO") model ordinance upon which the Pleasant Grove ordinance was based, reveal that "the governmental interest could be served as well by a more limited restriction on commercial speech." Cent. Hudson, 447 U.S. at 564. The NIMLO ordinance applies a bond requirement only to those solicitors who require cash deposits or the signing of finance agreements for the future delivery of goods. Provo, Utah's solicitation ordinance features the same limitation as the NIMLO ordinance. Provo City Code § 6.09.020. Therefore, a substantially narrower restriction of speech – one that exempts from the bond requirement solicitors like Pacific Frontier who exchange goods for payment at the time of sale and therefore do not present a risk of absconding with a cash deposit – would adequately serve Pleasant Grove's interests. See Mainstream Marketing, 358 F.3d 1238 (government fails to prove reasonable fit where "substantially narrower restrictions would have worked just as well."). Based on

the foregoing, we conclude that the district court did not abuse its discretion in finding that plaintiffs have a substantial likelihood of demonstrating that the bond provision violates the First Amendment.

Second, we cannot conclude that the district court abused its discretion in finding that the city failed to meet its burden of defending the Ordinance's fingerprint requirement.[11]   Pleasant Grove attempts to justify the requirement by arguing that it furthers the city's legitimate interests in assuring peaceful use of private property and in protecting its citizens against crime.  However, in a case

_____

[11] The Supreme Court, in dicta, has long approved regulations requiring solicitors to provide some form of identification.  In Cantwell v. Connecticut, 310 U.S. 296 (1940), the Court concluded that "a State may protect its citizens from fraudulent solicitation by requiring a stranger in the community, before permitting him publicly to solicit funds for any purpose, to establish his identity and his authority to act for the cause which he purports to represent." Id. at 306.  The Court has specifically approved the use of "identification devices [to] control the abuse of the privilege by criminals posing as canvassers." Martin v. Struthers, 319 U.S. 141, 148 (1943); see also Thomas v. Collins, 323 U.S. 516, 540 (1945) (an individual who "undertakes the collection of funds or securing subscriptions . . . enters a realm where a reasonable registration or identification requirement may be imposed.").  A government's power to regulate solicitors, even through identification gathering, is of course bounded by the First Amendment.  See Martin, 319 U.S. at 149 (all regulations must provide "due respect for the constitutional rights of those desiring to distribute literature and those desiring to receive it").  In various contexts, the Court has struck down on First Amendment grounds regulations requiring speakers or an association's members to identify themselves.  See, e.g., Talley v. California, 362 U.S. 60 (1960) (striking down municipal ordinance requiring all handbills to contain the author and distributor's names); Brown v. Socialist Workers '74 Campaign Committee, 459 U.S. 87 (1982) (holding that requirement of disclosing names and addresses of campaign contributors cannot constitutionally be applied to the party).

involving a municipal ordinance requiring canvassers to obtain a permit, the Supreme Court found both justifications wanting. With respect to the privacy justification, the Court concluded that "the ordinance, which provides for the posting of 'No Solicitation' signs and which is not challenged in this case, coupled with the resident's right to refuse to engage in conversation with unwelcome visitors, provides ample protection for the unwilling listener." Stratton, 536 U.S. at 169. Responding to the crime prevention rationale, the Court ruled that "it seems unlikely that the absence of a permit would preclude criminals from knocking on doors and engaging in conversations not covered by the ordinance. They might, for example, ask for directions or permission to use the telephone, or pose as surveyors or census takers." Id.

Although Stratton involved religious speech, and the Court explicitly acknowledged that the village's arguments might justify a regulation of commercial speech, the Court's analysis persuades us that Pleasant Grove has not met its burden in this case. See id. at 165. Pleasant Grove enforces compliance with posted "No Soliciting" signs, and requires proof of age, address, and identification, two photographs, and a background check of all applicants. Indeed, solicitors applying for a license are required to supply all "such information as the police department shall reasonably require." Plaintiffs do not challenge any of those requirements, which may assure adequately citizens'

privacy and provide law enforcement with the means of identifying potential criminals and deterring crime.

Pleasant Grove protests, however, that the fingerprint requirement uniquely furthers its interest in crime prevention and investigation. For support, Pleasant Grove relies on Captain Cullimore's testimony that fingerprinting applicants allows Pleasant Grove to "potentially" identify culprits in residential burglary investigations. City Attorney Peterson testified that the fingerprint requirement effectively deters criminal activity. When asked the basis for her belief, she stated "well, the fact that if I was a salesperson and going door-to-door and I knew that somebody can identify me by my fingerprints, obviously I would be less likely to commit a crime in the neighborhood and leave my fingerprints."

Yet, to defend successfully the fingerprint requirement, Pleasant Grove must show that its restriction has had more than "some impact" on the alleged harm. Greater New Orleans Broadcasting Ass'n, 527 U.S. at 189. Quite to the contrary, Pleasant Grove failed to establish below that its fingerprint requirement has had any impact on crime committed by solicitors. Although the city has used the background check to deny a license to a solicitor, information gained from an applicant's fingerprints has never contributed to the basis for a denial. Nor has Pleasant Grove produced any evidence of whether or how it uses fingerprints to investigate applicants. Additionally, a solicitor's fingerprints have never been

used to investigate or prosecute a crime. Indeed, Pleasant Grove did not describe its method of taking fingerprints or whether its method reliably assists in the investigation of crime. See, e.g., Nat'l People's Action v. Village of Wilmette, 914 F.2d 1008, 1012-13 (7th Cir. 1990) (affirming injunction against fingerprint requirement of solicitation license on First Amendment grounds because record does not establish that village can use the fingerprints to conduct background checks or investigate crimes, village has never used fingerprints for either purpose, and background checks are possible through other means). Any speculation that fingerprints would assist with crime prevention is further undercut by evidence that residential burglaries committed in Pleasant Grove by those posing as solicitors involved individuals who did not apply for a license. Captain Cullimore admitted that the fingerprint requirement would have been of no use in those investigations. The city has provided no evidence other than conjecture to support its argument that having solicitors' fingerprints on file would either deter crime or aid the investigation of a burglary.[12] Pleasant Grove

---

[12] Pleasant Grove attempts to fall back on language from Mainstream Marketing that "a commercial speech regulation may be justified by anecdotes, history, consensus, or simple common sense." Mainstream Marketing, 358 F.3d at 1237 (citing Florida Bar v. Went for It, Inc., 515 U.S. 618, 628 (1995)). The city argues that anecdotes and common sense justify its Ordinance. In Went for It, the Supreme Court, over the dissent of four Justices, upheld a solicitation regulation based on anecdotal evidence proffered by the Florida Bar. What constituted sufficient anecdotal evidence in that case provides helpful guidance as

(continued...)

- 22 -

has failed to show "that its restriction will in fact alleviate [the alleged harms] to a material degree." Edenfield, 507 U.S. at 771.

Municipalities have substantial interests in protecting their citizens from crime committed by door-to-door solicitors and in preserving the privacy of their residents. Conditioning a solicitation license on the posting of a bond or the submission of fingerprints may legitimately advance these substantial interests and comport with the First Amendment's strictures, so long as a city shows that it faces real harms, which are materially palliated by the requirements. In this case, the district court below concluded that Pleasant Grove failed to meet its burden of defending the bond and fingerprint requirements at issue. After reviewing the record, we are compelled to agree. Nothing about the trial court's ruling can be said to be "arbitrary, capricious, whimsical, or manifestly unreasonable." Austin, 231 F.3d at 1281.

---

[12](...continued)
we evaluate Pleasant Grove's evidence. The Florida Bar conducted a two-year study of the impact of lawyer advertising and solicitation, and compiled a 106-page summary of its findings including survey results, newspaper editorials, and complaints filed by citizens. Although the dissent complained that the summary included "no actual surveys, few indications of sample size or selection procedures, no explanations of methodology, . . . [and] no description of the statistical universe or scientific framework," Went for It, 515 U.S. at 640 (Kennedy, J., dissenting), the majority concluded that the evidence is "sufficient to meet the standard elaborated in Edenfield." Id. at 628. Pleasant Grove's evidence is wholly insufficient compared to that which was evaluated in Went for It.

**B**

Having concluded that the district court did not abuse its discretion in finding that plaintiffs have a substantial likelihood of succeeding on the merits, thus satisfying the first prong of the preliminary injunction test, we now address the second prong and evaluate plaintiffs' argument that they will suffer irreparable harm if denied an injunction on the bond and fingerprint provisions. The district court concluded that "[b]ecause Plaintiffs have established that the Ordinance deprives them of their First Amendment rights, they are entitled to a presumption of irreparable injury." "[L]oss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." Elrod v. Burns, 427 U.S. 347, 373 (1976). We therefore assume that plaintiffs have suffered irreparable injury when a government deprives plaintiffs of their commercial speech rights. See Utah Licensed Bev., 256 F.3d at 1076.

Pleasant Grove argues that although courts should presume that restrictions on commercial speech result in irreparable harm, such a presumption is rebuttable, and is rebutted in this case because plaintiffs can be adequately compensated for any harm done. Specifically, Pleasant Grove maintains that any bond can be returned with interest if its bond provision is found unconstitutional, and plaintiffs could sue to recover lost profits or secure compensation for harms

caused by fingerprinting should a court strike down that provision. Thus, Pleasant Grove maintains that plaintiffs' injuries are not irreparable.

We reject Pleasant Grove's argument that depriving plaintiffs of their First Amendment rights does not amount to irreparable injury simply because they can secure monetary compensation for both lost profits and the cost of complying with the Ordinance. Implicit in its argument is the notion that the value of commercial speech is limited to the pecuniary gain that can be secured through its exercise. This approach "attaches more importance to the distinction between commercial and noncommercial speech than our cases warrant and seriously underestimates the value of commercial speech." Cincinnati v. Discovery Network, 507 U.S. 410, 419 (1993). Commercial speech merits First Amendment protection not simply because it enables sellers to hawk their wares and gain a profit, but because it equips consumers with valuable information and because it contributes to the efficiency of a market economy. See Bates v. State Bar of Arizona, 433 U.S. 350, 364 (1977). Operating in an economy featuring informed consumers and an efficient allocation of resources clearly benefits both sellers and buyers. Therefore, the injury incurred through the deprivation of commercial speech rights cannot be quantified solely in terms of transaction costs and lost profits to a single market participant. Accordingly, the district court did not abuse its

discretion in concluding that plaintiffs suffered irreparable injury through the loss of their First Amendment rights.[13]

C

Because Pleasant Grove failed to show that the bond or fingerprint requirements materially advance its interests, the district court found that the city would not be seriously injured through the issuance of an injunction. Thus, the court concluded on the third factor of the preliminary injunction test that the threatened injury to plaintiffs' First Amendment rights outweighs any harm that Pleasant Grove would suffer through the issuance of an injunction. We agree.

Pleasant Grove argues that without the ability to collect a bond, it may have to incur substantial costs in tracking down solicitors who damage private property within the city and then flee. Although Pleasant Grove has identified a potential harm, the fact that the city has never compensated a citizen through the bond – and has no mechanism for doing so – makes it less likely that the city will in fact suffer such an injury during the pendency of this litigation. Moreover, using a background check and the other prophylactic measures contained in the Ordinance further diminishes the likelihood of harm. Even if Pleasant Grove demonstrated

---

[13] Given that municipal criminal cases were pending against the individual plaintiffs, and that federal abstention would likely have been warranted as a result, we reject Pleasant Grove's secondary argument that plaintiffs' delay in seeking federal injunctive relief mitigates against a finding of irreparable harm.

that it is likely to incur the cost of tracking down a tortfeasing solicitor, the district court did not abuse its discretion in finding that the constitutional harm plaintiffs will suffer outweighs the city's claimed injury. Additionally, Pleasant Grove argues that without the fingerprinting requirement, its cost of investigating solicitors will increase. The fact that information gained from a solicitor's fingerprints has never been used to deny a license, although licenses have been denied on the basis of the background check, belies the city's argument. Moreover, there is no evidence in the record detailing whether or how fingerprints are used to investigate solicitors, much less how fingerprinting solicitors operates as a cost-saving mechanism.

**D**

Under the final prong of the preliminary injunction test, plaintiffs must show that issuing a preliminary injunction would not be adverse to the public interest. They have succeeded in doing so. Vindicating First Amendment freedoms is clearly in the public interest. See Utah Licensed Bev., 256 F.3d at 1076 ("Because we have held that Utah's challenged statutes also unconstitutionally limit free speech, we conclude that enjoining their enforcement is an appropriate remedy not adverse to the public interest."); Elam Constr., Inc. v. Regional Transp. Dist., 129 F.3d 1343, 1347 (10th Cir. 1997) ("The public interest also favors plaintiffs' assertion of their First Amendment rights.").

Having reviewed all four factors of the preliminary injunction test, we are satisfied that the district court did not abuse its discretion in preliminarily enjoining enforcement of the Ordinance's bond and fingerprint provisions.

**IV**

On cross-appeal, plaintiffs argue that the district court erred by concluding that the Ordinance's annual fee provision was no longer at issue in the litigation, and urge us to instruct the district court to enjoin enforcement of the fee requirement. Furthermore, plaintiffs assert that the district court should have enjoined enforcement of the Ordinance because it unconstitutionally burdens interstate commerce. We conclude that neither argument is properly before us in this appeal of the district court's grant of a preliminary injunction. On remand, the court below should rule on these arguments.

With regard to the fee, the Ordinance provides that potential licensees must pay a $100 annual fee for a license. A Pleasant Grove employee produced an information sheet that erroneously instructed city employees to charge a fee of $100 per week. Plaintiffs sought an injunction against enforcement of the fee provision as applied on a weekly basis. Pleasant Grove discovered and acknowledged its mistake prior to the hearing on plaintiffs' motion for a preliminary injunction and assured the court that they have amended their practice and now comport with the terms of the Ordinance. The court concluded that the

licensing fee no longer presented an issue on the motion for a preliminary injunction, although it indicated at the hearing that the erroneously imposed fee requirement may nonetheless be considered at later stages of the litigation. Plaintiffs contend on appeal that the district court should have enjoined enforcement of the properly applied fee provision. Because neither party had sufficient opportunity to develop evidence or argument regarding the properly imposed fee requirement, and the district court did not rule on the issue, we decline to instruct the district court to enjoin this provision of the Ordinance.

In their motion for a preliminary injunction, plaintiffs based their claim for an injunction solely on an alleged infringement of their First Amendment freedoms. Nevertheless, in their memorandum supporting the motion for a preliminary injunction, plaintiffs argued in addition that the Ordinance unconstitutionally burdens interstate commerce. The district court granted the injunction based solely on plaintiffs' First Amendment arguments, and did not address the Commerce Clause claim. We decline to instruct the district court to enjoin the Ordinance's fee, bond, and fingerprint requirements on the basis of an alleged violation of the Commerce Clause.

Pursuant to 10th Circuit Rule 28.2(C)(2), parties must "cite the precise reference in the record where the issue was raised and ruled on." Doing so allows us to examine the district court's reasons for its decision. Where an issue has

been raised, but not ruled on, proper judicial administration generally favors remand for the district court to examine the issue initially. See, e.g., <u>Singleton v. Wulff</u>, 428 U.S. 106, 120 (1976) ("It is the general rule . . . that a federal appellate court does not consider an issue not passed upon below."); <u>In re R. Eric Peterson Constr. Co., Inc.</u>, 951 F.2d 1175, 1182 (10th Cir. 1991) ("The district court never reached this issue . . . . We therefore remand this issue to the district court"). We see no reason to deviate from that practice in this case. Because the court below ruled on neither the challenge to the annual fee provision nor plaintiffs' Commerce Clause argument, we remand for the district court to address these issues.

V

We **AFFIRM** the grant of a preliminary injunction enjoining enforcement of the Ordinance's bond and fingerprint provisions and **REMAND** for further proceedings consistent with this opinion.